UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------x
REY OLSEN and ALEX OLSEN,
individually and on behalf of all others
similarly situated,

              Plaintiffs,

    v.

NEW JERSEY DEVILS, LLC,

             Defendant.
---------------------------------------------------------x

**CLASS ACTION COMPLAINT**

Civil No.:

JURY TRIAL DEMANDED

Plaintiffs, Rey Olsen and Alex Olsen, individually and on behalf of all others similarly situated, as and for their complaint against defendant New Jersey Devils, LLC ("Devils"), allege as follows based upon their own personal knowledge as to their own actions and upon information and belief based upon the investigation of their counsel as to all other matters:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d), because there is the requisite diversity of citizenship between the plaintiff and/or at least one member of the purported class and defendant and because plaintiffs believe the aggregate amount in controversy exceeds $5 million.

2. Venue is proper in this District under 28 U.S.C. § 1391(a) because: (i) the conduct from which this cause of action arises occurred in this District; and (ii) defendant transacts business in this district.

## PARTIES

3. Plaintiff Rey Olsen ("R. O.") is a resident of the state of New York who has purchased season tickets to The Devils' since 2011 through the end of the 2013-2014 hockey season when the Devils cancelled his season tickets.

4. Plaintiff Alex Olsen ("A. O.") is a resident of the state of New York who has purchased season tickets to The Devils' since 2011 through the end of the 2013-2014 hockey season when the Devils cancelled his season tickets.

5. Defendant New Jersey Devils, LLC is a limited liability company registered with the New Jersey Division of Revenue to conduct business in New Jersey, and operates The "New Jersey Devils" ("Devils"), a professional hockey franchise of the National Hockey League, with its registered agent located in West Trenton, Mercer County, New Jersey.

## CLASS ACTION ALLEGATIONS

6. Plaintiffs bring this action in their own behalf and in a representative capacity on behalf of all persons similarly situated as a class described as all persons and entities who purchased season tickets to The Devils from 2010 through the present (the "Class Period").

7. Plaintiffs seek certification of the following class and subclasses under Fed. R. Civ. P. 23(b)(2) and (b)(3):

    a. The Declaratory Judgment Class: All season ticket subscribers to the Devils.

    b. Subclass 1: All season ticket subscribers whose season ticket subscriptions were not renewed because of their retail resale of individual game tickets.

    c. Subclass 2: All season ticket holders who were charged copying or other extra-contractual fees imposed upon season ticket holder whom the Devils identified as competing resellers.

2

8. The members of the Class and sub-classes (collectively "classes") are so numerous and geographically dispersed throughout New Jersey that joinder of all members is impractical. While the exact number of Class members is unknown to plaintiffs at this time, plaintiffs believe in good faith that the Class includes over ten thousand persons and entities which purchased Devils season tickets. Class members are identifiable from records maintained by defendant.

9. Plaintiffs' claims are typical of absent Class members' claims, as their claims arise from the same factual background and legal theories as the claims of the classes they seek to represent.

10. Plaintiffs will fairly and adequately protect the Classes' interests and have retained counsel competent and experienced in class-action litigation. Plaintiffs' interests are consistent with, and not antagonistic to, absent class members' interests.

11. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation effectively makes it impossible for individual Class members to seek redress for the wrongs complained of herein.

12. There are no unusual difficulties likely to be encountered in the management of this action as a class suit that could not be managed by this Court and a class action is superior to other methods for the adjudication of the claims.

13. The questions of law and fact common to the claims of each Class member overwhelmingly predominate over any questions of law or fact affecting only individual members of the Classes. Questions of law and fact common to the Class and subclasses include, but are not necessarily limited to, the following:

a. Whether defendant's actions constituted practices in breach of New Jersey Consumer Fraud Act, NJSA 56:8-1, et seq.;

b. Whether defendant's acts and policies and the term and conditions it imposes upon plaintiffs and other season ticket subscribers violated New Jersey statutes governing tickets sales and resales, *i.e.* NJSA 56:8-33;

c. Whether defendant has violated the Truth in Consumer Contract Warranty and Notice Act, NJS 56:12-14 *et seq.*("TCCNWA");

d. Whether defendant's breaches and violations caused plaintiffs and the Class to suffer damages; and

e. The amount of plaintiffs' and the Classes' damages.

## SUBSTANTIVE ALLEGATIONS

14. Plaintiffs were season ticket holders to New Jersey Devils hockey games.

15. Like many season ticket holders, plaintiffs were simply unable to attend each and every Devils home game given that there are 40 home games every season (not counting exhibitions) within a span of the 6 month hockey regular season. In many weeks of the season, there are more than 2 games scheduled per week.

16. To avoid wasting tickets, a season ticket subscriber will attempt to sell tickets to games he/she/it cannot utilize. Plaintiffs have in the past sold and/or attempted to resell some of their season tickets into the retail (secondary) market.

17. The most efficient way for a season ticket subscriber to sell unusable tickets is through on-line internet sites that connect buyers and sellers directly through the site, such as "Stub-hub" which is secure and user-friendly. In 2014, Consumer Reports awarded Stub Hub a "Nice" designation on its year end "Naughty & Nice List." *See* http://www.consumerreports.org/cro/news/2014/11/naughty-and-nice-list-2014-bad-and-good-company-policies/index.htm (last accessed February 24, 2015). Since Stub-hub offers reliable

4

service and safeguards to minimize the opportunity for fraud in the secondary sale of tickets, Devils have no justifiable reason to preclude, or penalize, season ticket holders who sell Devils tickets on Stub-hub.

18. New Jersey law allows season tickets subscribers such as plaintiffs and class members an unlimited right to sell tickets on line at any price. Implicit in the law that nothing shall limit the price for resale is the unencumbered ability to resell.

19. New Jersey law provides in pertinent part:

   (i) N.J.S.A. § re-sale 56:8-33 (c) states that **"nothing** shall limit the price for the resale or purchase of a ticket for admission to a place of entertainment sold by any person other than a registered ticket broker, provided such resale or purchase is made through an Internet web site." (emphasis added).

20. The published legislative intent of the law explains how the law was intended to work:

   (i) Legislative Intent: "Under current law, individuals may not resell tickets for admission to a place of entertainment in excess of 20% of the ticket price or $3, whichever is greater, plus lawful taxes. Registered ticket brokers and *season ticket holders* are allowed to resell tickets at a premium up to 50% of the price paid to acquire the ticket, plus lawful taxes. As amended by the committee, this bill would lift all caps on the price for the resale or purchase of a ticket sold by *a person other than a registered ticket broker*, as long as the sale is made through an *Internet web site. In doing so, this bill would level the playing field for citizens of this State trying to relieve themselves of extra tickets, which would otherwise go unused. Currently, New Jersey residents face an unfair disadvantage when competing with sellers/rom surrounding states, who are not restricted by price caps on tickets resold via the Internet."* (emphasis added). The bill would also remove the current statutory provision that the face of a ticket include language indicating the maximum premium at which the ticket may be resold. *See* New Jersey Assembly Committee Statement, 213th Legislature, March 10, 2008.

   (ii) The Assembly Committee Amendments...

      a. Exclude from the definition of "ticket broker" individuals who are not regularly engaged in the business of reselling tickets,

5

      who resell less than 30 tickets during a one year period, and who obtained the tickets for their own use or the use of family, friends, or acquaintances;

    b. Keep intact the requirement for each place of entertainment to print the ticket price charged for an event on any advertisement for that event; and

    c. ***Exempt season ticket holders from their current price caps by treating as other individuals who are not ticket brokers.***

21. According to the Devils, the terms and conditions of season ticket ownership consist of such terms and conditions as appear on the face of the "invoice" and the reverse side of each ticket. Nothing in those terms and conditions prohibits or limits a season ticket holders rights to transfer tickets.

22. Devils distribute a booklet that lists benefits of a season ticket subscription which, in pertinent part, states:

> "Renewal Benefits & Season Ticket Seat Upgrades"
> "at the end of the 2013-2014 seasons, Devils Season Ticket Holders who renew their seats by the renewal will qualify for "VALUE, ACCESS and EXPERIENCE" benefits and have the opportunity to maintain their existing seat locations, or upgrade into open seat locations, before the general public."

This constitutes part of the terms and conditions of the Season Ticket Subscriber Contract between plaintiffs, the Class and defendant and grants plaintiffs and other season ticket holders an automatic right to renewal.

23. New Jersey law has recognized that a right to renew season tickets is an implied right under the season ticket subscription contract. Applicable law also recognized that the "license" nature of a season ticket agreement does not permit a team to revoke season tickets at will. New Jersey common law and statutory law supplement the explicit terms and conditions of

6

New Jersey's Supreme Court long ago articulated an implied condition in every contract as follows:

> [I]n every contract there is an implied covenant of good faith and fair dealing. As a corollary to that proposition it is certainly reasonable to imply that neither party to a contract shall injure the right of the other to receive the fruits of the agreement.

*Onderdonk v. Presbyterian Homes of NJ*, 85 N.J. 171, 182 (1981). More recent New Jersey law is even more explicit: "Good faith emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Fehr v. Algard*, 2011 WL 13670 (N.J. Super A.D. 2011).

24. The Devils, like most major league sports teams, are desperate to control the secondary market for game tickets because the consumer has the choice of purchasing from a secondary reseller or the Devils box office. The Devils wish to restrain competition to its box office sales. Accordingly, the Devils have made the "NHL Ticket Exchange" their exclusive "official" ticket re-seller. The Ticket Exchange is operated by Ticketmaster, which is the "exclusive ticketing provider for all League events" according to the Ticketmaster November 5, 2013 press release PR Newswire "National Hockey League Renews Agreement With Ticketmaster." Ticketmaster is the "official resale partner" of the NHL and other sports leagues and venues. . . including the NFL, NBA, New York Yankees, Los Angeles Angels and major metropolitan area sports venues such as Madison Square Garden, (home of the NHL New York Rangers); the Prudential Center (home of the NHL Devils) and Nassau Coliseum (home of the NHL Islanders).

25. To gain control over the resale market for Devils game ticket, defendant has resorted to illegal and anticompetitive means such as:

7

- Prohibiting or obstructing plaintiffs and other season ticket subscribers from selling individual or blocks of game tickets;

- Imposing extra contractual fees on season ticket holders;

- Refusing to renew season ticket subscriptions of plaintiffs and other season ticket holders who sell individual game tickets into the secondary market;

- Prohibiting ticket print outs at the discretion of the season ticket holder and limiting printing of tickets which limits a ticket holders' ability to re-sell their tickets.

26. The foregoing are contrary to the letter and spirit New Jersey law protecting internet ticket resales from unlawful obstruction and attempts at market control and monopoly such as engaged in by Devils here.

27. Control of the secondary ticket market allows Devils to control pricing over their own inventory of game tickets by restricting supply of game tickets and impinges on plaintiffs' and class members contractual renewal rights and legal rights to sell tickets.

28. Plaintiffs maintained and renewed their season tickets for a period of 5 years (seasons) until unilaterally terminated by defendant.

29. Devils have unilaterally imposed onerous conditions upon plaintiffs not included within any express or implied terms and conditions of the season ticket subscriber contract. Among those onerous conditions are "printing fees" imposed upon season ticket holders whom the Devils have designated as a re-seller at the rate of $1.95 per ticket; refusing to upgrade plaintiffs and other class members labelled as "resellers"; refusing to renew season tickets; barring plaintiffs and other class members from reselling.

30. Accordingly, Devils' acts, policies, terms and conditions regarding season ticket holders rights to re-sell tickets are contrary to, and in violation of several statutes of the New Jersey Consumer Fraud Act pertaining to entertainment event tickets.

## CLAIMS FOR RELIEF

### COUNT I

### New Jersey Consumer Fraud Act

31. Plaintiffs reallege and incorporate by reference the allegations set forth above that relate to this Count.

32. Defendant, in its capacity as a Seller is a "person" for the purposes of the Consumer Fraud Act, as codified in N.J.S.A. 56:8-1, *et seq*.

33. Plaintiffs and the other members of the Class were misled and suffered ascertainable loss as a result of defendant's actions in violation of the Consumer Fraud Act.

34. The services provided by defendant and used by plaintiffs and the Class are "merchandise" as defined in N.J.S.A. 56:8-1(c).

35. Defendant violated the Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, by engaging in unconscionable commercial practices, as alleged herein.

36. Such unconscionable commercial practices make defendant liable to the plaintiffs and the Class under N.J.S.A. 56:8-2, which provides that "[a]ny person violating the provisions of the act shall be liable for a refund of all moneys acquired by means of any practice declared to be unlawful."

37. As a proximate result of these violations of the Consumer Fraud Act, plaintiffs and the Class suffered ascertainable economic loss and other costs.

38. As a direct and proximate result of paying for carpet installation overcharges, plaintiffs and the other members of the Class suffered economic loss in an amount to be established at trial.

39. Defendant is further liable to plaintiffs and the Class for treble damages under N.J.S.A. 56:8-13, 19.

40. Plaintiffs and the Class are also entitled to recover attorney's fees and costs, as well as treble damages under N.J.S.A. 56:8-19.

## COUNT II

### Violations Of The Truth-in-Consumer Contract, Warranty & Notice Act (TCCWNA) N.J.S.A. § 56:12-14 *et seq.*

41. Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully pled here that relate to this Count.

42. Tickets to Devils games and season ticket subscriptions as well as defendant's website, receipts, emails, are consumer contracts, offers to contract, and/or notices subject to Truth-in-Consumer Contract, Warranty & Notice Act (TCCWNA) N.J.S.A. § 56:12-14 *et seq.*

43. Defendant has violated TCCWNA at N.J.S.A. § 56:12-15 by violating the CFA, as set forth in Count I and violating New Jersey law regarding ticket resales, *i.e.* N.J.S.A. 56:8-33 *et seq.*

## COUNT III

### (For Declaratory Relief That The Devils Restrictions Against Ticket Resales By Season Ticket Subscribers Violates New Jersey Statutes)

44. Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully pled here that relate to this Count.

45. Plaintiffs repeat and reallege each and every allegation of this Complaint as through fully set forth herein.

46. Plaintiffs seek a declaration that the conduct of the Devils as described herein infringes on plaintiffs' rights under New Jersey law to resell their single game tickets.

47. There is a present controversy among plaintiffs and defendant on this issue that requires resolution.

**WHEREFORE**, plaintiffs demand, individually and on behalf of the Classes, monetary damages from defendant.

### PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs, on their own behalf and on behalf of the Class, pray for judgment:

(a) For certification of this matter as a class action with the class and subclasses defined pursuant to the definitions proposed in this Complaint, *supra*, appointing the named plaintiffs as class representatives and appointing Squitieri & Fearon, LLP as class counsel;

(b) For injunctive relief prohibiting defendant from future violations of the CFA, TCCWNA and New Jersey ticket reselling laws;

(c) For a declaratory judgment that the defendant violated the CFA, TCCWNA and ticket reselling laws;

(d) For statutory damages of $100 per violation pursuant to TCCWNA, pursuant to N.J.S.A. 56:12-17;

(e) For reasonable attorneys' fees and costs of suit in connection with this action pursuant to N.J.S.A. 56:8-19, N.J.S.A. 56:12-17, and all other applicable statutes;

(f) For pre-judgment and post-judgment interest; and

(g) For such other and further relief, including general relief, as plaintiffs and all other similarly situated may be entitled or as the Court deems equitable and just.

Dated: April 21, 2015

                              SQUITIERI & FEARON, LLP

                              By: _____
                                   Olimpio Lee Squitieri
                              2600 Kennedy Boulevard
                              Suite 1K
                              Jersey City, New Jersey 07306
                              (201) 200-0900

                                      -and-

                              32 East 57th Street
                              12th Floor
                              New York, New York 10022
                              (212) 421-6492

                              Attorneys for Plaintiffs