PROSKAUER ROSE LLP
Michelle A. Annese
One Newark Center
Newark, NJ 07102
Ph.: (973) 274-3200
Fax: (973) 274-3299
mannese@proskauer.com

Kevin J. Perra*
David S. Mordkoff*
Eleven Times Square
New York, NY 10036
Ph.: (212) 969-3000
Fax: (212) 969-2900
kperra@proskauer.com
dmordkoff@proskauer.com
*Admitted *pro hac vice*

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| REY OLSEN and ALEX OLSEN, individually and on behalf of all others similarly situated, | Civil Action No. 15-cv-2807 (CCC) (MF) |
| Plaintiffs, | *Document Electronically Filed* |
| v. | **ORAL ARGUMENT REQUESTED** |
| NEW JERSEY DEVILS, LLC, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT NEW JERSEY DEVILS, LLC'S
## MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................3

MOTION TO DISMISS STANDARDS ...........................................................................7

ARGUMENT ................................................................................................................7

I.     THE CLAIM FOR BREACH OF CONTRACT FAILS BECAUSE THERE IS
NO "RENEWAL RIGHT" AND PLAINTIFFS DID NOT PLEAD DAMAGES.............7

     A.    New Jersey Breach Of Contract Standards ...........................................8

     B.    There Is No Express "Renewal Right" Contract.....................................8

          1.    The Invoices And Ticket Backs...................................................8

          2.    The "Booklet" ...........................................................................9

          3.    The 2013-14 Renewal Package.................................................10

     C.    There Is No Implied "Renewal Right" Contract...................................11

          1.    Courts Routinely Hold That There Is No Renewal Right Implied In The
Purchase Of A Season Ticket ....................................................12

          2.    The *Oshinsky* Case Does Not Create An Implied Renewal Right ............14

     D.    Plaintiffs Have Not Pled Damages For The Purported Breach Of Contract..........17

II.    THE CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND
FAIR DEALING ALSO FAILS ...................................................................17

     A.    Count II Must Be Dismissed To The Extent It Is Based On Defendant's
Decision Not To Offer Plaintiffs The Opportunity To Renew Or
Withholding Benefits And Upgrades Given To Other Season Ticket Holders .....18

     B.    Count II Fails To The Extent It Is Based On Alleged Fees And Timing
Restrictions On The Printing Of Tickets ............................................18

     C.    Plaintiffs Fail To Plead Bad Faith Or Ill Motive ..................................20

III.   THE NEW JERSEY CONSUMER FRAUD ACT CLAIM FAILS................................21

     A.    Plaintiffs Cannot Show A Violation of N.J.S.A. § 56:8-33 ...................22

i

1.      Plaintiffs Cannot Show A Violation Of The Text Of The Statute............22

2.      Any Claims Based On A Violation Of The "Spirit"
        Of § 56:8-33 Also Fail .................................................................................23

B.      Plaintiffs Fail To Meet Either The Rule 8 Or Rule 9(b) Pleading Standards
        For Nearly All Of Their NJCFA Claim ..............................................24

C.      Plaintiffs Have Failed To Plead An "Unlawful Practice"......................................25

1.      Not Offering Renewal Is A Purported Contractual Issue And Insufficient
        To Support An NJCFA Claim ..................................................................26

2.      The Alleged Printing Fee Is Insufficient To Support An NJCFA Claim...27

D.      Plaintiffs Fail To Show That They Suffered An Ascertainable Loss ...................27

E.      Plaintiffs Fail To Show Causation .........................................................29

IV.     THE DECLARATORY RELIEF CLAIM FAILS ............................................29

CONCLUSION...............................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Acad. of Motion Picture Arts & Scis. v. Olsen*,
   2004 WL 292134 (Cal. Ct. App. Feb. 17, 2004) .......................................................1

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................7, 12, 21

*Baer v. Chase*,
   392 F.3d 609 (3d Cir. 2004).........................................................................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................3, 7

*Borough of W. Caldwell v. Borough of Caldwell*,
   26 N.J. 9 (1958) .........................................................................................................12

*Brotherson v. Prof'l Basketball Club, L.L.C.*,
   604 F. Supp. 2d 1276 (W.D. Wash. 2009)............................................................15, 16

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., Ltd.*,
   182 N.J. 210 (2005) .........................................................................................17, 19, 20

*Chasin v. Montclair State Univ.*,
   159 N.J. 418 (1999) ....................................................................................................23

*Cox v. Sears Roebuck & Co.*,
   138 N.J. 2 (1994) .................................................................................24, 25, 26, 27, 29

*Delaney v. Am. Express Co.*,
   No. 06-5134 (JAP), 2007 WL 1420766 (D.N.J. May 11, 2007) ..............................17

*DiProspero v. Penn*,
   183 N.J. 477 (2005) ....................................................................................................24

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
   784 F. Supp. 2d 508 (D.N.J. 2011) ............................................................................29

*Facteon, Inc. v. Comp Care Partners, LLC*,
   No. 13-6765, 2014 WL 6685380 (D.N.J. Nov. 26, 2014) .........................................12

*Faistl v. Energy Plus Holdings, LLC*,
   No. 12-2879 (JLL), 2012 WL 3835815 (D.N.J. Sept. 4, 2012)................................21

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
    482 F.3d 247 (3d Cir. 2007) ......................................................................... 9

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ............................................................... 8, 17, 25

*Global Fresh Produce, Inc. v. Epicure Trading, Inc.*,
    No. 11-1270, 2012 WL 924326 (D.N.J. Mar. 16, 2012) (Cecchi, J.) ..................... 30

*Gordon v. United Cont'l Holding, Inc.*,
    73 F. Supp. 3d 472, 479 (D.N.J. 2014) ........................................................... 8

*Green v. Green Mountain Coffee Roasters, Inc.*,
    279 F.R.D. 275 (D.N.J. 2011) ................................................................. 27, 28

*In re Advanta Corp. Sec. Litig.*,
    180 F.3d 525 (3d Cir. 1999) ....................................................................... 25

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) .................................................................... 3, 4

*In re Donald J. Trump Casino Sec. Litig.*,
    7 F.3d 357 (3d Cir. 1993) .......................................................................... 3

*In re Harrell*,
    73 F.3d 218 (9th Cir. 1995) ...................................................................... 13

*In re I.D. Craig Serv. Corp.*,
    138 B.R. 490 (W.D. Pa. 1992) .............................................................. 15, 16

*In re Liebman*,
    208 B.R. 38 (Bankr. N.D. Ill. 1997) ............................................................ 13

*In re Passaic Cnty. Utils. Auth.*,
    164 N.J. 270 (2000) ................................................................................ 22

*In re Plan for Abolition of Council on Affordable Hous.*,
    214 N.J. 444 (2013) ................................................................................ 23

*In re Tucker Freight Lines, Inc.*,
    Case No. HK83-02391, Adv. Pro. No. 84-0381 (Bankr. W.D. Mich. July 30,
    1984) ................................................................................................ 14

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*,
    192 N.J. 372 (2007) ................................................................................ 22

*Iwanicki v. Bay State Milling Co.*,
    No. 11-1792, 2011 WL 6131956 (D.N.J. Dec. 7, 2011) (Cecchi, J.) ............... 18, 19

*Jatras v. Bank of Am. Corp.*,
   No. 09-3107 (RBK), 2010 WL 5418912 (D.N.J. Dec. 23, 2010)............................................29

*Kancor Americas, Inc. v. ATC Ingredients, Inc.*,
   No. 14-4107, 2015 WL 1530740 (D.N.J. Apr. 2, 2015).........................................................30

*Koronthaly v. L'Oreal USA, Inc.*,
   374 F. App'x 257 (3d Cir. 2010) .........................................................................................28

*Kully v. Goldman*,
   305 N.W.2d 800 (Neb. 1981)..............................................................................................13

*Lieberson v. Johnson & Johnson Consumer Cos.*,
   865 F. Supp. 2d 529 (D.N.J. 2011) ...........................................................................27, 28, 29

*Malhan v. Anthony Robbins Cos.*,
   No. 05-5951 (WJM), 2006 WL 776778 (D.N.J. Mar. 24, 2006)........................................8, 11

*Manahawkin Convalescent v. O'Neill*,
   217 N.J. 99 (2014) .............................................................................................................11

*Mayer v. Belichik*,
   605 F.3d 223 (3d Cir. 2010).................................................................................................28

*Mercedes-Benz USA, LLC v. ATX Grp., Inc.*,
   No. 08-3529 (WHW), 2010 WL 3283544 (D.N.J. Aug. 18, 2010) ......................................21

*Mesaros v. United States*,
   845 F.2d 1576 (Fed. Cir. 1988)...........................................................................................10

*Meshinsky v. Nichols Yacht Sales, Inc.*,
   110 N.J. 464 (1988) ...........................................................................................................29

*Morris Cnty. Cardiology Consultants, PA v. Nw. Mut. Life Ins. Co.*,
   No. 08-308 (SRC), 2009 WL 3068260 (D.N.J. Sept. 21, 2009)...........................................25

*Noye v. Hoffman-La Roche Inc.*,
   238 N.J. Super. 430 (App. Div. 1990) .................................................................................18

*Oshinsky v. N.Y. Football Giants, Inc.*,
   No. 09-1186 (PGS), 2009 WL 4120237 (D.N.J. Nov. 17, 2009) .........................14, 15, 16, 17

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993)................................................................................................3

*Ramon v. Budget Rent-A-Car Sys., Inc.*,
   No. 06-1905 (WJM), 2007 WL 604795 (D.N.J. Feb. 20, 2007)........................................3, 25

*Santiago v. Warminster Twp.*,
    629 F.3d 121 (3d Cir. 2010) .................................................................20

*Schlichtman v. N.J. Highway Auth.*,
    243 N.J. Super. 464 (Law Div. 1990) .................................................10

*Shubert v. Nixon Amusement Co.*,
    83 N.J.L. 101 (1912) ...........................................................................9

*Slinko-Shevchuk v. Ocwen Fin. Corp.*,
    No. 13-5633, 2015 WL 1271963 (D.N.J. Mar. 18, 2015) (Cecchi, J.) ...................................26

*Soderholm v. Chi. Nat'l League Ball Club, Inc.*,
    587 N.E.2d 517 (Ill. App. Ct. 1992) ........................................... passim

*Stewart v. Smart Balance, Inc.*,
    No. 11-6174 (JLL), 2012 WL 4168584 (D.N.J. June 26, 2012) ........................................27, 28

*TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*,
    No. 12-3355 (RBK), 2014 WL 3853900 (D.N.J. Aug. 5, 2014) ............................................17

*Thiedemann v. Mercedes-Benz USA, LLC*,
    183 N.J. 234 (2005) ......................................................................27, 28

*Tremco Can. Div., RPM Can. v. Dartronics, Inc.*,
    No. 13-1641 (SRC), 2013 WL 2444076 (D.N.J. June 4, 2013) ..........................................7, 25

*Van Holt v. Liberty Mut. Fire Ins. Co.*,
    163 F.3d 161 (3d Cir. 1998) .................................................................26

*Venditto v. Vivint, Inc.*,
    No. 14-4357 (JLL), 2015 WL 926203 (D.N.J. Mar. 2, 2015) ...........................................26

*Von Nessi v. XM Satellite Radio Holdings, Inc.*,
    No. 07-2820 (PGS), 2008 WL 4447115 (D.N.J. Sept. 26, 2008) ........................................30

*World Sports Grp., Inc. v. Motion Picture Acad. of Arts & Scis.*,
    709 N.Y.S.2d 56 (App. Div. 2000) .........................................................1

*Yarde Metals, Inc. v. New Eng. Patriots Ltd. P'ship*,
    834 N.E.2d 1233 (Mass. App. Ct. 2005) ...........................................13, 14

**STATUTES**

N.J.S.A. § 56:8-26..........................................................................................................5, 24

N.J.S.A. § 56:8-33......................................................................................................... passim

N.J.S.A. § 56:8-34...........................................................................................................24

N.J.S.A. § 56:8-37...........................................................................................................23

**OTHER AUTHORITIES**

Restatement (Second) of Contracts § 24 (1981)............................................................9

Defendant New Jersey Devils, LLC ("Defendant" or "Devils") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Class Action Complaint ("Amended Complaint" or "A.C.") in its entirety pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

Plaintiffs Rey and Alex Olsen (collectively, "Plaintiffs" or the "Olsens") have brought this putative class action lawsuit against Defendant purportedly to vindicate the rights of fans of the New Jersey Devils that have bought season tickets to Devils home hockey games. While Plaintiffs shy away from the true facts in their Amended Complaint, the reality is that Plaintiffs have their own separate agenda, and their interests do not align with fans who have bought season tickets. They are, at bottom, ticket brokers masking as "fans" who are most interested in buying and reselling large numbers of tickets for their own financial benefit. Notably, they fail to allege whether they were properly registered as ticket brokers or whether their conduct complied with a ticket resale statute, the violation of which could constitute a fourth-degree crime. Given their agenda, it is unsurprising that one Plaintiff – Rey Olsen – is no stranger to baseless litigation involving the resale of tickets.[2] No matter their motivation, Plaintiffs' claims cannot survive because their ultimately hollow Amended Complaint is devoid of the allegations necessary to state a claim for relief.

Plaintiff's initial Complaint consisted primarily of a baseless claim that Defendant violated the New Jersey Consumer Fraud Act ("NJCFA"), allegedly – to the extent the allegations could be deciphered – for violating a statute governing ticket resale. When

---

[1] A copy of the Amended Complaint (D.E. 16) with exhibits is attached as Exhibit 1 to the accompanying Declaration of David S. Mordkoff ("Mordkoff Decl.").

[2] It appears that Rey Olsen and his company (World Sports Group) were plaintiffs in litigation involving the resale of tickets to the Academy Awards. In 2000, a New York appellate court affirmed a trial court's dismissal of Olsen's and World Sports Group's complaint, which found the lawsuit to be "frivolous" and awarded attorneys' fees. *World Sports Grp., Inc. v. Motion Picture Acad. of Arts & Scis.*, 709 N.Y.S.2d 56, 56 (App. Div. 2000). *See also Acad. of Motion Picture Arts & Scis. v. Olsen*, 2004 WL 292134, at *2, *9 (Cal. Ct. App. Feb. 17, 2004) (affirming trial court's finding of liability against Olsen and award of costs and sanctions).

Defendant filed a motion to dismiss that pointed out the numerous flaws in the NJCFA claim, Plaintiffs changed course.  Instead of opposing the motion, Plaintiffs sought leave to amend. With that leave, Plaintiffs dropped one claim, kept the NJCFA claim and concocted a new theory in the Amended Complaint – that after purchasing Devils season tickets for, at most, two seasons, they now had a "renewal right."  Plaintiffs now assert that Defendant was contractually obligated to offer them the opportunity to purchase season tickets after every season.

In the Amended Complaint, Plaintiffs have not fixed the problems with their NJCFA claim. (Count III).  They make no effort to state which of Defendant's acts allegedly violated the statute.  For a claim that requires pleading with particularity to satisfy Rule 9(b), Plaintiffs fall well short, failing to plead adequately any of the required elements (unlawful act, ascertainable loss, or causation) for an NJCFA claim.  And to the extent their claim rests on a purported violation of N.J.S.A. § 56:8-33, that statute does not proscribe any conduct of Defendant – it simply sets maximum prices for resale.  In fact, Plaintiffs conveniently omit matters essential to whether they violated this statute, including: whether they were ticket brokers, how many tickets they sold, and the prices at which they sold their tickets.

Plaintiffs' new claims fare no better than the NJCFA claim.  Specifically, Plaintiffs claim that Defendant breached a contractual obligation to offer them the opportunity to purchase season tickets for the 2014-15 season and beyond.  (Count I).  However, Plaintiffs do not and cannot point to a single piece of paper that expresses such an obligation.  Apparently recognizing this dispositive fact, the Olsens also allege that there is an implied obligation to offer renewal. But numerous courts have held that even decades of offering renewal to a season ticket holder does not create an implied contractual obligation for the team to continue to do so.

Plaintiffs also allege that Defendants breached the implied covenant of good faith and fair dealing by: choosing not to offer them the opportunity to renew; charging them a nominal fee to print tickets online; and implementing a timing restriction on when tickets could be printed online.  (Count II).  The claim fails for the same reasons the contract claim fails:  there simply is

no basis in the documents or Plaintiffs' allegations from which one could find either any such obligations or any violation of them.

Finally, Plaintiffs seek a declaratory judgment that Defendant's conduct "infringes on Plaintiffs' rights under New Jersey law to resell their single-game tickets." (A.C. ¶ 82) (Count IV). However, Plaintiffs fail to point to any New Jersey statutes or cases that give rise to such "rights under New Jersey law."

## STATEMENT OF FACTS[3]

Defendant owns and operates the New Jersey Devils, a professional hockey club in the National Hockey League ("NHL"). (A.C. ¶ 5). Since 2007, the Devils have played their home games at the Prudential Center in Newark. The NHL season runs from approximately late September through April and is followed by playoffs, which run through June. In an ordinary season, NHL teams play up to three home exhibition (or "pre-season") games, followed by 82 regular season games, 41 at home and 41 away. Like other operators of sports teams, Defendant sells season tickets to its home games. (A.C. ¶¶ 5, 14). As described more fully below, each Devils season ticket provides the buyer with a series of tickets (each specifically labeled as its own revocable license) for the same seat for each home pre-season and regular season game at the Prudential Center during one NHL season.

The Olsens allege that they are New York residents, who purchased Devils season tickets "since 2012 through the end of the 2013-14 hockey season[.]" (A.C. ¶¶ 3-4). As Plaintiffs'

---

[3] The Court must accept as true well-pled factual allegations in the Amended Complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). If Plaintiffs' "allegations are contradicted by such documents upon which [their] claims are based, the Court need not accept such allegations as true." *Ramon v. Budget Rent-A-Car Sys., Inc.*, No. 06-1905 (WJM), 2007 WL 604795, at *2 (D.N.J. Feb. 20, 2007). The Court may consider facts found in documents cited or relied on in the Amended Complaint or matters of public record. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (court may consider "document integral to or explicitly relied upon in the complaint"); *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) (court may consider document if "plaintiff's claims are based on the document"); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (court may consider matters of public record).

2012-13 season invoices show,[4] Alex Olsen purchased a full-season ticket package for four seats for the 2012-13 season, while Rey Olsen purchased partial-season tickets for four seats for all home games played after February 28, 2013.[5]  Both of these invoices stated the following:

> Undersigned confirms the terms of purchase of the Season Tickets and payment of the charges indicated above.  I understand that my account is not transferable and non-refundable.  The Ticket License terms printed on each individual game ticket shall apply to license for admission to each Devils game under this Ticket License and each subsequent renewal. (Weber Decl. Ex. 1-2).

In approximately March 2013, Defendant voluntarily offered the Olsens the opportunity to purchase (*i.e.*, "renew") a full-season ticket package for 2013-14 for the same seats for which they purchased tickets in the 2012-13 season.  The Devils sent to account holders who were granted the opportunity to renew a renewal brochure (the "Devils 2013-14 Renewal Package" (A.C. ¶ 50)), a copy of which is Exhibit B to the Amended Complaint (Mordkoff Decl. Ex. 1).  The 2013-14 Renewal Package contained a paper invoice.  (Weber Decl. ¶ 4 and Ex. 3).  To renew their tickets, account holders who received the Renewal Package could fill out and return the invoice or renew online.  (A.C. Ex. B at 7).  Both Alex Olsen and Rey Olsen purchased full-season ticket packages for the 2013-14 season.  (A.C. ¶¶ 3-4, 14).

In approximately September 2013, Defendant shipped to those who had purchased 2013-14 season tickets what Plaintiffs describe as a "booklet" (A.C. ¶ 23).  (Weber Decl. ¶ 5 and Ex. 4).  Each account received one "booklet" for each seat for which it had purchased season tickets.  Each booklet contained hard copy tickets for a single seat for all pre-season and regular-season home games at the Prudential Center for the 2013-14 season and additional material describing benefits and policies relating to season tickets.  *Id.*

---

[4] Plaintiffs' invoices are explicitly cited in the Amended Complaint (¶ 22) and may be considered on this motion.  *Burlington Coat Factory*, 114 F.3d at 1426.  The invoices are attached as Exhibits 1 and 2 to the accompanying Declaration of Hugh Weber ("Weber Decl.").

[5] Because of a labor dispute between the NHL and its players' union, the 2012-13 regular season did not begin until January 2013 and teams played only 24 regular-season home games.

Terms and conditions printed on the back of each ticket in the 2013-14 "booklet" made clear that ticket holders received a revocable license to that game (and that game only):

> This ticket is a **revocable license** subject to the following: The holder of this ticket ("Holder") is hereby granted one admission to the Prudential Center ("Arena") for the purpose of viewing the New Jersey Devils LLC ("Devils") hockey event indicated on the reverse side of this ticket ("Event") upon the conditions set forth below.

(Weber Decl. Ex. 6) (emphasis added).[6]  Nowhere in the booklet or ticket backs did Defendant offer season ticket holders anything like "an automatic right to renewal."  (A.C. ¶ 23).

Allegedly "unable to attend each and every" Devils' home game, the Olsens resold and attempted to resell "some" of their tickets on the "retail" or secondary market.[7]  (A.C. ¶¶ 15, 17, 32).  While Plaintiffs describe the website StubHub.com (A.C. ¶ 18), they allege zero facts as to: (1) the number of tickets they resold; (2) the prices at which they resold; and (3) whether they sold through StubHub or other means.

Despite their claims regarding Defendant's resale policies, Plaintiffs allege that Defendant allowed season ticket holders to resell tickets they could not use.  (A.C. ¶ 35).  Before the 2013-14 season, Defendant introduced NHL Ticket Exchange as its "official" – but not exclusive – ticket resale marketplace. (A.C. ¶ 25, Weber Decl. Ex. 7).  For the 2013-14 season, ticket holders could resell their tickets through NHL Ticket Exchange (Option #1 in the "booklet," Weber Decl. Ex. 4 at 2 ("Manage Your Tickets Online")), or through other means

---

[6] The terms and conditions on the back of the hard 2012-13 season tickets were the same as those on the back of 2013-14 season tickets.  (Weber Decl. ¶ 8).

[7] Plaintiffs do not allege whether they were (or were not) "ticket brokers" as that term is defined (N.J.S.A. § 56:8-26(f)) in the ticketing law portion of the NJCFA (N.J.S.A. §§ 56:8-26 to 8-38). The original Complaint (Mordkoff Decl. Ex. 2) implied that Plaintiffs were not brokers by stating that Plaintiffs had "an unlimited right to sell tickets online at any price" (Compl. ¶ 18), a statement that could only be true if Plaintiffs were not brokers because New Jersey law sets clear limits on the prices at which "ticket brokers" may resell tickets – on the Internet or otherwise. N.J.S.A. § 56:8-33(b) and (c).  In the Amended Complaint, Plaintiffs hedge by saying that they have "an unlimited right to sell tickets online" without mentioning price.  (A.C. ¶ 19).

(*e.g.*, on StubHub.com) and "forward" them electronically to others (Option #2 in the "booklet"). Plaintiffs do not allege that Defendant had restrictions on the resale of hard copy tickets.

Plaintiffs allege that they were charged $1.95 to "print" their tickets online during the 2012-13 and 2013-14 seasons. (A.C. ¶ 63). "Printing" a ticket creates a new, digital version of the ticket license for a specific seat for a specific game, which can then be "forwarded" to someone else (which voids the original hard ticket for that seat and game). (Weber Decl. Ex. 4 at 2). During the 2013-14 season, season ticket holders could print or forward tickets online starting 48 hours before a game. (A.C. ¶ 29). Plaintiffs acknowledge that Defendant did not charge a printing or forwarding fee for sales made through NHL Ticket Exchange during the 2013-14 season (A.C. ¶¶ 29-30, 63), and Plaintiffs do not allege that there was a fee charged by Defendant for reselling hard copy tickets.

Plaintiffs have not alleged that Defendant limited the **price** at which season ticket holders could resell tickets, and no document contains such a restriction. To the contrary, included with the "booklet" for the 2013-14 season was a one-page insert with details about NHL Ticket Exchange, which noted its "greater price flexibility." (Weber Decl. ¶ 9 and Ex. 7). This insert touted three ways fans could price their tickets on NHL Ticket Exchange, including "Fixed Price: You will be able to set the price yourself, with more flexibility than ever before[.]" *Id.*

Plaintiffs allege that printing fees and timing restrictions were implemented to "prop up" NHL Ticket Exchange and to "undermine" the secondary market. (A.C. ¶¶ 30-31). Plaintiffs claim that as a result of these policies, the tickets they attempted to sell "sold for less and at times went unused." (A.C. ¶ 32). Plaintiffs also allege, without further detail, that Defendant denied them certain benefits, including upgraded seats and memorabilia. (A.C. ¶¶ 33-34, 69).

Before the 2014-15 season (in approximately March 2014), Defendant sent a letter to the Olsens and "all resellers that the Devils believed had sold more than half [of] their [season] tickets." (A.C. ¶¶ 36, 39). The letter informed recipients, including the Olsens, that Defendant would "no longer generally be offering season tickets to accounts, such as yours, that our records show have engaged in the resale of tickets for 50% or more of the home games that have been

played thus far during the 2013-14 Season." (A.C. ¶¶ 36-37). Thus, in this letter, Defendant informed Plaintiffs that it was exercising its legally recognized right to decline to offer Plaintiffs the opportunity to renew their season tickets for the 2014-15 season. Plaintiffs describe this as having their season tickets "cancelled" or renewal rights "terminated" (A.C. ¶¶ 3-4, 60). But, as described in detail below, there could be no such "cancellation" or "termination" because Defendant had no contractual obligation to offer renewal for the 2014-15 season.

## MOTION TO DISMISS STANDARDS

To survive a motion to dismiss, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. Rather, plaintiffs must plead "[f]actual allegations [sufficient] to raise a right to relief above the speculative level[.]" *Id*. While factual allegations are taken as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Twombly*, 550 U.S. at 555. A complaint must have "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Further, as discussed in more detail below in Section III, to assert a claim pursuant to the NJCFA (Plaintiffs' Count III), the complaint "must meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b)." *Tremco Can. Div., RPM Can. v. Dartronics, Inc.*, No. 13-1641 (SRC), 2013 WL 2444076, at *2 (D.N.J. June 4, 2013).

## ARGUMENT

## I.    THE CLAIM FOR BREACH OF CONTRACT FAILS BECAUSE THERE IS NO "RENEWAL RIGHT" AND PLAINTIFFS DID NOT PLEAD DAMAGES

Plaintiffs allege that there is a contract between Defendant and season ticket holders, including the Olsens, that obligates Defendant to offer all season ticket holders the right to renew their season ticket licenses for the next season, apparently in perpetuity. Plaintiffs claim in some

places that this renewal rights contract is expressed in the writings between the parties (*e.g.*, A.C. ¶ 23) and elsewhere argue that the renewal right is implied (*e.g.*, A.C. ¶ 24). Plaintiffs' contract claim must be dismissed because, as a matter of law, there is no renewal rights contract – either express or implied. None of the writings that Plaintiffs point to have language that comes close to expressing a "renewal right." Under settled law, Devils tickets are nothing more than revocable licenses, without any implied right to renew. Count I also fails because Plaintiffs do not allege damages from the purported breach of the renewal right.

### A.    New Jersey Breach Of Contract Standards

To state a claim for breach of contract, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that [plaintiff] performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). On a motion to dismiss, a court may review documents that make up a purported contract, determine their plain meaning, and hold that plaintiff has not asserted a claim for breach of contract under the terms of those documents. *See*, *e.g.*, *Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 479 (D.N.J. 2014) (dismissing claim for breach of airline's frequent flier program contract after reviewing contract documents, determining plain meaning, and holding that defendant was not barred by the contract from engaging in the alleged conduct); *Malhan v. Anthony Robbins Cos.*, No. 05-5951 (WJM), 2006 WL 776778, at *3 (D.N.J. Mar. 24, 2006) (dismissing breach of contract claim where plaintiffs alleged that contract obligated defendant to seat them together, but contract documents contained no such obligation).

### B.    There Is No Express "Renewal Right" Contract

An examination of the documents which Plaintiffs refer to in the Amended Complaint conclusively establishes that Defendant had no contractual obligation to offer Plaintiffs the opportunity to renew for the 2014-15 season.

#### 1.    The Invoices And Ticket Backs

The invoices and ticket backs set forth the terms and conditions of the purported contract

(A.C. ¶ 22) and, therefore, should be the first place to look for any renewal obligations on the part of the Devils.  But Plaintiffs do not and cannot point to anything in the invoices or ticket backs that creates an obligation on the part of Defendant to offer Plaintiffs the opportunity to renew.  The 2012-13 and 2013-14 invoices themselves simply state:

> Undersigned confirms the terms of purchase of the Season Tickets and payment of the charges indicated above.  I understand that my account is not transferable and non-refundable.  The Ticket License terms printed on each individual game ticket shall apply to license for admission to each Devils game under this Ticket License and each subsequent renewal.

(Weber Decl. Ex. 1-3).  The reverse side of the hard copy tickets sent to season ticket holders for the 2012-13 and 2013-14 seasons also does not create a renewal obligation.  Indeed, the language on the ticket backs clearly states that each ticket was a "revocable license" for just one game, confirming long-standing New Jersey law on that subject.  (Weber Decl. Ex. 5-6 ("This ticket is a revocable license subject to the following")).  *See Shubert v. Nixon Amusement Co.*, 83 N.J.L. 101, 103-07 (1912).

## 2.  The "Booklet"

Plaintiffs assert that the "booklet" that Defendant sent to season ticket holders with their 2013-14 season ticket delivery "constitutes part of the terms and conditions of the Season Ticket Subscriber Contract . . . and grants plaintiffs and other season ticket holders an automatic right to renewal."  (A.C. ¶ 23).  This conclusory statement is contradicted by the "booklet" itself because, like the invoices and ticket backs, nowhere in the "booklet" does Defendant state in any fashion that it obligated itself to offer season ticket account holders the right to renew their tickets for the following season.  Further, the "booklet," which was included with the mailing of hard copy tickets, was not a contractual offer.  "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."  *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 250 (3d Cir. 2007) (quoting Restatement (Second) of Contracts § 24 (1981)).  At most,

9

the "booklet" was an informational mailing, providing details about benefits and other matters for the forthcoming season. *See Schlichtman v. N.J. Highway Auth.*, 243 N.J. Super. 464, 469 (Law Div. 1990) (citing *Mesaros v. United States*, 845 F.2d 1576, 1580-81 (Fed. Cir. 1988) ("It is well established that materials such as those mailed to prospective customers . . . are no more than advertisements or invitations to deal. They are mere notices and solicitations for offers which create no power of acceptance in the recipient")).

### 3. The 2013-14 Renewal Package

Plaintiffs claim that the 2013-14 Renewal Package (A.C. Ex. B) sets forth that "renewal is a season ticket holder's right." (A.C. ¶ 50). This puts the cart before the horse. The 2013-14 Renewal Package is not evidence of the existence of a "renewal right" for the 2014-15 season or any subsequent season. As courts which have considered this very issue before have held, a package like the 2013-14 Renewal Guide, which contained an invoice and extended the opportunity to purchase tickets for next season by a specific deadline, "constitute[d] defendant's offer to sell season tickets for the subsequent season." *Soderholm v. Chi. Nat'l League Ball Club, Inc.*, 587 N.E.2d 517, 519 (Ill. App. Ct. 1992) (holding that multiple annual offers of renewal to a season ticket holder did not create a renewal obligation). Thus, by sending the season ticket holder the Renewal Package, it is **Defendant that is exercising its right** to offer that holder the opportunity to renew its annual revocable license for the following season.

Once Defendant sent a season ticket account holder the 2013-14 Renewal Package, it was the recipient's choice whether to renew, which he or she could do online or by filling out an enclosed invoice and mailing it back to Defendant. (A.C. ¶ 51 and Ex. B at 7). To encourage those holders to whom it offered renewal to purchase tickets for the upcoming season, the Renewal Package lists certain benefits, including (for example) an opportunity to upgrade seat location and team store discounts. (A.C. Ex. B at 3). As discussed below, these benefits **are not** evidence of an obligation to offer renewal for future seasons; they merely describe the benefits for the 2013-14 season if the account holder chooses to accept the offer to renew for that season.

Thus, as in *Soderholm*, the contract offered by the 2013-14 Renewal Guide – on its face – was for a single season only, the 2013-14 season. 587 N.E.2d at 519. ("the invoice and 'Season Ticket Fact Sheet' sent by defendant to season ticket holders at the end of the season, constitute defendant's offer to sell season tickets for the subsequent season which the offeree accepts by timely payment"). There is no text in the 2013-14 Renewal Guide in which Defendant offers to obligate itself to offer renewal for future seasons.[8]

*       *       *

Plaintiffs have failed to cite a single writing between the parties that contains language expressing a renewal right obligation. More specifically, Plaintiffs have not shown any offer by Defendant to bind itself to an annual and perpetual renewal obligation. If the documents are "plain and capable of legal construction," the "language alone must determine [their] force and effect." *Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 118 (2014) (internal citations omitted). Plaintiffs' assertion that there is an express renewal obligation cannot stand in the face of unambiguous text that does not contain such an obligation. *Malhan*, 2006 WL 776778, at *3 ("[contract] in no way guaranteed Plaintiffs their preferred seating; nor [did Plaintiffs provide] any evidence favoring an interpretation of the Contract that would support such a contention").

### C.    There Is No Implied "Renewal Right" Contract

Perhaps recognizing that their express renewal argument was doomed from the start, Plaintiffs also assert that Defendant's decision not to offer them the opportunity to renew their season tickets constituted a violation of an implied "renewal right" obligation. (A.C. ¶¶ 24, 52). The Amended Complaint does not contain sufficient allegations to support the existence of an implied contract.[9] As noted above, none of the documents cited contain language which could

---

[8] Plaintiffs also cite the 2014-15 Renewal Package (A.C. Ex. C) as evidence of a contract. (A.C. ¶¶ 49, 52)). However, Plaintiffs do not allege that Defendant sent them the 2014-15 Renewal Package, as they allege Defendant did not offer them an opportunity to renew. Therefore, it could not constitute part of any purported contract with Plaintiffs.

[9] "The true implied contract consists of an obligation arising from mutual agreement and intent to promise but where the agreement and promise have not been expressed in words[.]" *Borough*

11

be interpreted as containing an offer by Defendant to obligate itself to extend the opportunity to renew their season tickets after every season. *Facteon, Inc. v. Comp Care Partners, LLC*, No. 13-6765, 2014 WL 6685380, at *8 (D.N.J. Nov. 26, 2014) (dismissing breach of implied contract claim where not even the "most liberal reading" of the relevant document revealed any "intent to promise anything . . . such that any sort of implied contract was created").

To establish their purported implied contract, Plaintiffs must show, at a minimum, evidence of "mutual agreement and intent to promise" a renewal obligation. *W. Caldwell*, 26 N.J. at 29. Plaintiffs try to manufacture such "mutual agreement" by pleading, without further support that "it is understood between the parties that, in purchasing season tickets, a season ticket holder may renew their season tickets for subsequent seasons." (A.C. ¶ 47). This is precisely the sort of "naked assertion" or "conclusory statement[]" of a necessary element of a claim that courts disregard on a motion to dismiss. *Iqbal*, 556 U.S. at 678. Nor can the renewal obligation be implied through past conduct: the act of offering season ticket holders the opportunity to renew in previous seasons is not evidence of the existence of a renewal obligation.

    1.  <u>Courts Routinely Hold That There Is No Renewal Right Implied In The Purchase Of A Season Ticket</u>

In the absence of a writing establishing a renewal right, courts repeatedly hold that there is no implied renewal obligation – even when a team has offered season ticket holders the opportunity to renew for the following season for many consecutive years. For example, in *Soderholm*, the "sole issue on appeal [was] whether the purchase of Cubs season tickets from 1985 through 1990 gave plaintiff an option to purchase season tickets for the 1991 season." 587 N.E. 2d at 518. Soderholm purchased season tickets for the Cubs starting in 1985. From the

---

*of W. Caldwell v. Borough of Caldwell*, 26 N.J. 9, 29 (1958). "Contracts are 'express' when the parties state their terms and 'implied' when the parties do not state their terms. The distinction is based not on the contracts' legal effect but on the way the parties manifest their mutual assent. . . . There cannot be an implied-in-fact contract if there is an express contract that covers the same subject matter. In other words, express contract and implied-in-fact contract theories are mutually exclusive." *Baer v. Chase*, 392 F.3d 609, 616-17 (3d Cir. 2004) (citations omitted).

1985 season through the 1990 season, the Cubs sent Soderholm an invoice offering him season tickets for the following season, and Soderholm accepted by returning payment with the invoice. After the 1990 season, the Cubs informed Soderholm that it would not offer him 1991 season tickets. *Id*. As here, no writing had established a right to renew. *Id.* at 518-19. Nonetheless, Soderholm argued that he had a contractual right of first refusal for season tickets for the 1991 season – the same "renewal right" that Plaintiffs allege they have here. *Id*. at 519. The trial court dismissed Soderholm's complaint and the appellate court affirmed. *Id*. at 521.

Without a writing creating a renewal right, the Illinois appellate court held "that no option contract existed and plaintiff had no right of first refusal to season tickets." *Id*. at 520. "In the absence of such agreement, we cannot conclude that the sale of season tickets to plaintiff from 1985 through 1990 obligated defendant to sell plaintiff season tickets in 1991." *Id.* at 519. Instead, the court found that the invoice and materials sent by the Cubs to season ticket holders – like the Devils 2013-14 Renewal Package (A.C. Ex. B) – "constitute[d] defendant's offer to sell season tickets for the subsequent season which the offeree accepts by timely payment. Defendant did not send an invoice to plaintiff in 1990, and therefore made no offer to sell plaintiff season tickets for the 1991 season." *Id.* at 519.

Similarly, in *Kully v. Goldman* (which the *Soderholm* court found persuasive, *Id.* at 520), the Supreme Court of Nebraska held that despite 17 years of annually purchasing season tickets to University of Nebraska football games, the ticket holder (Goldman) "had no contractual right with the university which bound it to annually, for any period of time, sell him tickets upon tender by him of the purchase price. . . . **The university could, at any time if it chose, refuse to sell tickets to Goldman**." 305 N.W.2d 800, 802 (Neb. 1981) (emphasis added). Numerous other courts have found that there is no contractual or property right for the renewal of season tickets. *See In re Harrell*, 73 F.3d 218, 220 (9th Cir. 1995) ("debtor's revocable opportunity to renew season tickets is not a property right"); *In re Liebman*, 208 B.R. 38, 41 (Bankr. N.D. Ill. 1997) ("expectation that the tickets would be renewed, however realistic, does not ripen into a property interest"); *Yarde Metals, Inc. v. New Eng. Patriots Ltd. P'ship*, 834 N.E.2d 1233 (Mass. App. Ct.

13

2005) (affirming dismissal of contractual renewal rights claim despite twenty-year history of plaintiff renewing season tickets). *See also Soderholm*, 587 N.E.2d at 519 (finding persuasive *In re Tucker Freight Lines, Inc.*, Case No. HK83-02391, Adv. Pro. No. 84-0381 (Bankr. W.D. Mich. July 30, 1984), which held that "custom" of plaintiff receiving renewal opportunity for Notre Dame football tickets for 40 years did not create a contract mandating renewal).

## 2. The *Oshinsky* Case Does Not Create An Implied Renewal Right

Plaintiffs' asserted legal conclusion that New Jersey law has recognized an implied right to renew season tickets is mistaken. (A.C. ¶ 24). The likely source of Plaintiffs' misstatement that there exists "an implied right under the season ticket subscription contract" is *Oshinsky v. N.Y. Football Giants, Inc.*, No. 09-1186 (PGS), 2009 WL 4120237 (D.N.J. Nov. 17, 2009) ("*Oshinsky*"). In that case, Oshinsky had been a season ticket holder of the New York Jets and Giants football teams for 24 years, who renewed his season tickets for the same seats each year when offered the opportunity by each team. In 2008, the Jets and Giants announced changes to their season ticket renewal procedures for the 2010 season, the first in a new stadium. To buy season tickets in 2010, Giants season ticket holders had to purchase a personal seat license ("PSL") for each season ticket. The Jets required the purchase of a PSL for season tickets in the lower tier of the new stadium, but not the upper tier. *Oshinsky*, 2009 WL 4120237, at *1. Not wanting to pay thousands of dollars for a PSL for seats comparable to the ones that he had purchased for more than two decades, Oshinsky sued, alleging (among other claims) breach of an "implied option contract to continue to purchase [his] bundle of tickets in perpetuity (what [Oshinsky] refers to as 'Renewal Rights')." *Id.* at *4. The Jets and Giants moved to dismiss.

Relying on two cases where there were **express** renewal contracts between the team and season ticket holder, the *Oshinsky* court ruled that the plaintiff had sufficiently alleged that an **implied** renewal right **could** exist, based on his 24 years of purchasing the same six seats from the Giants and four seats from the Jets. *Id.* at *5. The court denied the motion to dismiss the

14

breach of contract claim (while dismissing all other claims) and allowed "limited discovery" dealing "exclusively" with whether Oshinsky had renewal rights. *Id.* at *10.

Whereas Oshinsky was a 24-year season ticket holder, buying the same seats each season, Alex Olsen was a full-season ticket holder for two seasons, while Rey Olsen bought full-season tickets only once. Further, while Oshinsky expressed a desire to keep the same seats for each upcoming season, the Olsens' biggest complaint is that they cannot resell their tickets as easily. (A.C. ¶¶ 32, 62-63). In *Oshinsky* court needed limited discovery because of uncertainty at the pleading stage about the existence (and possible content) of writings or commitments made over a 24-year relationship. Here, every document dealing with the provision of season tickets that Plaintiffs mention in the Amended Complaint is in the record, and none creates an express or implied renewal right.

Further, the *Oshinsky* court relied on two express renewal contract cases in denying the motion to dismiss the implied contract claim: *Brotherson v. Professional Basketball Club, L.L.C.*, 604 F. Supp. 2d 1276 (W.D. Wash. 2009), and *In re I.D. Craig Serv. Corp.*, 138 B.R. 490 (W.D. Pa. 1992). The *Oshinsky* court found these "two cases persuasive authority" and that "[c]ollectively, these cases make clear that season ticket renewal rights can derive expressly from a written agreement or implied through course of conduct." 2009 WL 4120237, at *4. However, in both *Brotherson* and *I.D. Craig*, there was a writing that **expressly** provided a renewal right.

In *Brotherson*, amid reports that the NBA's Seattle SuperSonics might move to a new city before the team's arena lease expired in 2010, the team created the "Emerald Club" in 2007 to entice fans to extend their season tickets through the 2009-2010 season. Offering what it termed "unprecedented commitment" of cost certainty through the end of the 2009-10 season, the team issued a written "Emerald Club Brochure," which explicitly offered 2006-07 season ticket holders who renewed their tickets for the 2007-08 season the option to renew their tickets at the same price for the 2008-09 and 2009-10 seasons. 604 F. Supp. 2d at 1279-80, 1284. The *Brotherson* plaintiffs joined the Emerald Club on that basis before the 2007-08 season. In June 2008, it was announced that the team was moving to Oklahoma City that summer, rendering

valueless plaintiffs' express options to renew for the next two seasons.

In *I.D. Craig*, a debtor corporation had been a season ticket holder for the Pittsburgh Steelers. After the debtor filed for bankruptcy, the trustee sought to sell tickets to Steelers home games for the 1990 season, and the purported renewal rights associated with each ticket. 138 B.R. at 492. The Steelers objected to the sale of the purported renewal rights. *Id.* The court addressed whether the "amorphous nature" of alleged "renewal rights" could be considered "property" of the estate that the trustee could sell. *Id.* at 492, 495. The court expressly noted that "[s]ome of the recited facts [in the decision] were stipulated by the parties. Others are as found by the court. See Stipulation, Docket Entry 642." *Id.* at 492 n.1. In that Stipulation, the parties stipulated that: "The Steelers Season Ticket Holder Handbook **expressly provides** for the renewal or assignment of season tickets." (Mordkoff Decl., Ex. 3 at 2 (¶1(e))). (emphasis added). The court further noted: "[the Handbook] is the only written document containing ticket policy about transfer and renewal. The Handbook is distributed to all season ticket holders." *I.D. Craig*, 138 B.R. at 493. The court also stressed that season ticket accounts could be transferred to "any other person or entity" upon written request and payment of a $5 fee. *Id.* at 492.[10] While the court found for the trustee and held there was some form of expectancy interest in renewal rights, such finding was premised on transferrable accounts and a written renewal obligation. *Id.* at 495.

While *Brotherson* and *I.D. Craig* establish that renewal rights can derive from an express writing, neither case stands for the proposition that renewal rights may be implied without such a writing. The *Oshinsky* court did correctly state – and it is equally applicable here – that "the first issue confronting the Court on [the] motion[] to dismiss is not whether renewal rights can exist at all, but whether they exist under the particular facts of this case." *Id.* Unlike *Brotherson* and *I.D. Craig*, there is no express writing here that creates a contractual renewal right. Further,

---

[10] Unlike in *I.D. Craig*, the Devils season ticket invoices expressly state that each account is "non-transferrable." (Weber Decl. Ex. 1-3).

following limited discovery, the *Oshinsky* court ruled – as nearly all courts have – that there was no conduct by the Jets or Giants that could create an implied renewal right. *Estate of Oshinsky v. N.Y. Football Giants, Inc.*, No. 09-01186 (PGS), 2011 WL 383880, at *9 (D.N.J. Feb. 2, 2011).

### D.    Plaintiffs Have Not Pled Damages For The Purported Breach Of Contract

Damages are a required element of a claim for breach of contract. *Frederico*, 507 F.3d at 203. Yet nowhere do Plaintiffs state that they suffered any damages as a result of Defendant's decision not to offer them the opportunity to renew. Plaintiffs received the tickets and benefits that they paid for in both seasons in which they purchased season tickets. Thus, because Plaintiffs have not alleged that they suffered any loss from the breach of the purported renewal rights obligation, "their claim for breach of contract fails as a matter of law." *Delaney v. Am. Express Co.*, No. 06-5134 (JAP), 2007 WL 1420766, at *5 (D.N.J. May 11, 2007).

## II.    THE CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING ALSO FAILS

Count II alleges a violation of the implied covenant of good faith and fair dealing. "The covenant of good faith and fair dealing calls for parties to a contract to refrain from doing anything which will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., Ltd.*, 182 N.J. 210, 224-25 (2005) (citation and internal quotation omitted). To state a claim for the breach of the implied covenant, Plaintiffs must allege: (1) the existence of a contract between Plaintiffs and Defendant; (2) Plaintiffs' performance under the contract; (3) Defendant "engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving [Plaintiffs] of the rights and benefits under the contract; and (4) [D]efendant's conduct caused [Plaintiffs] to suffer injury, damage, loss or harm." *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355 (RBK), 2014 WL 3853900, at *3 (D.N.J. Aug. 5, 2014) (citation omitted). "Proof of 'bad motive or intention' is vital to an action for breach of the covenant." *Brunswick Hills*, 182 N.J. at 225.

17

Plaintiffs allege that four purported acts constituted a violation of this covenant:  (1) Defendant's decision not to offer them the opportunity to renew their season tickets after the 2013-14 season (A.C. ¶¶ 58, 60-61, 64, 67-68); (2) withholding from Plaintiffs certain additional benefits that other season tickets holders allegedly received (A.C. ¶ 69); (3) limiting ticket printing to the 48 hours before a game (A.C. ¶ 62); and (4) "imposing" a $1.95 fee on printing tickets online on those season ticket holders that Defendant deemed to be "resellers" (A.C. ¶ 63). None of these allegations are sufficient to state a claim, and Count II should be dismissed.

### A.    Count II Must Be Dismissed To The Extent It Is Based On Defendant's Decision Not To Offer Plaintiffs The Opportunity To Renew Or Withholding Benefits And Upgrades Given To Other Season Ticket Holders

"The parties must have a valid contract in order for there to be a breach of an implied covenant of good faith and fair dealing."  *Iwanicki v. Bay State Milling Co.*, No. 11-1792, 2011 WL 6131956, at *4 (D.N.J. Dec. 7, 2011) (Cecchi, J.).  "In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing."  *Noye v. Hoffman-La Roche Inc.*, 238 N.J. Super. 430, 434 (App. Div. 1990).  As set forth above, there is no contract with a renewal rights obligation, and Count II therefore fails to the extent it is based on Defendant's decision not to offer renewal.

Count II similarly fails to the extent it is based on the alleged "withhold[ing] from resellers the benefits and upgrades that were given to other season ticket holders."  (A.C. ¶ 69). Plaintiffs allege that Defendant gave season ticket holders who renewed after the 2013-14 season certain benefits that Plaintiffs, who were denied renewal, did not receive.  (A.C. ¶ 23).  The clear terms of the purported contract said that those benefits would be given only to "[h]olders who renew[.]" *Id*.  Plaintiffs, of course, did not renew, so they did not qualify for these benefits.

### B.    Count II Fails To The Extent It Is Based On Alleged Fees And Timing Restrictions On The Printing Of Tickets

As set forth in *Soderholm*, absent writings to the contrary, a season ticket contract runs for a single season.  The club operator offers the existing season ticket holder the opportunity to

purchase tickets under the prices and terms specified in the renewal offer materials, and the holder accepts by tendering payment.  587 N.E.2d at 519.  That is the contract that the parties here formed, when Plaintiffs purchased their tickets for the 2013-14 season.  Plaintiffs paid the required price and Defendants provided a series of revocable licenses and any other benefits to which Plaintiffs were entitled for the 2013-14 season. (A.C. Ex. B).

Plaintiffs assert that there is a contract,[11] but do not state any of its terms, other than the purported renewal obligation (A.C. ¶¶ 24, 53) and that season ticket holders who renew their season tickets for the 2014-15 season qualify for certain benefits and seat upgrade opportunity.  Plaintiffs do not allege any contractual terms governing the printing and forwarding of tickets.

While a claim for breach of the implied covenant of good faith and fair dealing does not depend on proving a violation of an express term of a contract, *Brunswick Hills*, 182 N.J. at 226, Plaintiffs still must point to a contract governing the subject matter that they allege constitutes a violation of the implied covenant.  Plaintiffs must show which "benefits of the contract" they were denied.  *Id.* at 225.  As this Court stated in dismissing contract and implied covenant claims in *Iwanicki*, "Plaintiff has not identified the contract that was allegedly breached or the provisions of the contract that were allegedly breached.  Without more information, Plaintiff's allegations are insufficient to sustain [an implied covenant claim.]" 2011 WL 6131956, at *4.

As for claimed violations of the implied covenant for imposing fees and printing restrictions, Plaintiffs have not pointed to any contract governing those matters.  Nor can they point to any "benefits of the contract" of which they have been deprived by the alleged acts.  *Brunswick Hills*, 182 N.J. at 225.  The contract was one for the purchase of tickets for the 2013-14 season only; there was no renewal right.  Defendant provided the tickets.  There are no missing benefits.

---

[11] Plaintiffs refer to a "Season Ticket Subscriber Contract" (A.C. ¶ 23) or "season ticket subscription contract" (A.C. ¶ 24) or "the contract" (A.C. ¶¶ 44, 56-59, 67-69).

Plaintiffs assert that charging an online printing fee and restricting the printing time "restricted ticket resales in contravention of the reasonable expectations of the parties[.]"  *Id.* (A.C. ¶¶ 62-63).  They allege that they "reasonably expected that they could sell tickets that they purchased which would otherwise go unused," but do not plead facts showing this supposed expectation was not met. (A.C. ¶ 60).[12]  Under the facts alleged, Plaintiffs could still resell their tickets.  They could resell electronic version of the tickets on NHL Ticket Exchange without printing fees.  Or they could pay $1.95 and "print" electronic tickets for resale elsewhere.  They do not allege a contractual restriction on selling their hard copy tickets.  Plaintiffs have not pointed out any "benefits" of which they have been deprived, or provided factual support that the printing fee and timing limitation restricted their ticket sales.  Notably, Plaintiffs did not plead any detail about the frequency and prices of their ticket resales.

Also, the printing fee could not have violated Plaintiffs' "reasonable expectations," because they allegedly "were charged these fees in the 2012-2013 season and the 2013-2014 season."  (A.C. ¶ 63).  After paying the fees for tickets that they "printed" during the 2012-13 season, both Alex and Rey Olsen decided to renew their season tickets (after Defendant offered them the opportunity to do so) for the 2013-14 season, where they were charged the same fee again.  Under the facts alleged, the only reasonable expectation that the Olsens could have had was that they would be charged the printing fee.

### C.    Plaintiffs Fail To Plead Bad Faith Or Ill Motive

Proof of bad motive is a required element for an implied covenant claim.  The New Jersey Supreme Court has "warned that an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive."  *Brunswick Hills*, 182 N.J. at 231 (internal quotation and citation omitted).  Courts dismiss implied covenant claims

---

[12] Plaintiffs' unilateral expressions of what the "reasonable expectations of the parties" were, or what their own were (A.C. ¶ 60) should be ignored.  These are the sorts of "naked assertions devoid of further factual enhancement" that should be disregarded on a motion to dismiss. *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010).

where a plaintiff "has alleged no facts whatsoever to support the theory that [d]efendants exercised their discretionary . . . authority in bad faith." *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879 (JLL), 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012). A complaint that offers only "'naked assertion[s]' devoid of 'further factual enhancement'" cannot suffice. *Id.* (quoting *Iqbal*, 556 U.S. at 678). The Amended Complaint contains insufficient allegations of "bad faith" – merely repeating the phrase "bad faith" (A.C. ¶¶ 66, 69) is not enough.

Plaintiffs fail to plead bad faith in connection with the printing fee and timing restriction. First, it cannot be "bad faith" to charge the printing fee where the Olsens were charged the printing fee in 2012-13, willingly renewed their tickets, and were charged the same fee the next season. (A.C. ¶ 63). Second, even if Defendant did impose the fee and timing restriction to compete with Plaintiffs on the resale market (A.C. ¶ 65), such competition would not be sufficient to demonstrate bad faith. *Mercedes-Benz USA, LLC v. ATX Grp., Inc.*, No. 08-3529 (WHW), 2010 WL 3283544, at *8-*9 (D.N.J. Aug. 18, 2010) (dismissing implied covenant claim because plaintiff "had no reasonable expectation that [defendant] would not compete with it" and the fact of competition did not "rise to the level of bad motive"). In the absence of bad motive, discretionary decisions that happen to result in simply economic disadvantage to the other party are not of legal significance. *See, e.g., Id.* Thus allegations concerning Defendant's purported purpose of competing with Plaintiffs on the ticket resale market are insufficient to show bad faith. Nor do Plaintiffs plead bad faith for denying them renewal.

## III.    THE NEW JERSEY CONSUMER FRAUD ACT CLAIM FAILS

Count III alleges a violation of the NJCFA, but does so only in a rote and formulaic manner. If Count III is based on a purported violation of N.J.S.A. § 56:8-33, the claim fails because that provision does not proscribe any conduct of Defendant. As for a standard NJCFA claim under § 56:8-2, Plaintiffs have failed to meet the pleading thresholds of Rule 8 and Rule 9(b) and have failed to plead the required elements: (1) unlawful conduct by Defendant; (2) ascertainable loss by Plaintiffs; and (3) causation between the unlawful conduct and

ascertainable loss. *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007). Each missing element provides an independent ground for dismissal.

### A. Plaintiffs Cannot Show A Violation of N.J.S.A. § 56:8-33

Plaintiffs refer to New Jersey law governing ticketing at various points in their pleading. (A.C. ¶¶ 13(d), 20-21, 44, 82). The ticketing provisions of the NJCFA (N.J.S.A. § 56:8-26 to 8-38) govern the licensing requirements and behavior of ticket brokers and other ticketing matters. While Plaintiffs claim multiple violations of the ticketing law, they cite to only one provision: § 56:8-33. Section 56:8-33 governs maximum resale prices, and nowhere do Plaintiffs allege that Defendant limited the resale price of their tickets to Devils games. Plaintiffs' claims based on purported violations of unwritten rights "implicit" in § 56:8-33(c) are similarly unavailing.

#### 1. Plaintiffs Cannot Show A Violation Of The Text Of The Statute

 "The first step in any statutory analysis is to examine the statute's plain language as the clearest indication of its meaning. If the statutory language is clear and unambiguous, and susceptible to only one interpretation, courts should apply the statute as written without resort to extrinsic interpretative aids." *In re Passaic Cnty. Utils. Auth.*, 164 N.J. 270, 299 (2000). As written, § 56:8-33(c) merely provides an exception to the resale price limits of subsection (b).

> b. **No person other than a registered ticket broker** shall resell or purchase with the intent to resell a ticket for admission to a place of entertainment at a maximum premium in excess of 20% of the ticket price or $3.00, whichever is greater, plus lawful taxes. **No registered ticket broker** shall resell or purchase with the intent to resell a ticket for admission to a place of entertainment at a premium in excess of 50% of the price paid to acquire the ticket, plus lawful taxes.
>
> c. Notwithstanding the provisions of subsection a. or b. of this section, nothing shall limit the price for the resale or purchase of a ticket for admission to a place of entertainment **sold by any person other than a registered ticket broker**, provided such resale or purchase is made through an Internet web site.

N.J.S.A. § 56:8-33(b) and (c) (emphasis added).[13]  Subsection (b) sets the maximum resale prices

for ticket brokers and non-brokers.  Anyone who resells at a price over the statutory limit of

subsection (b) would be guilty of a crime in the fourth degree (§ 56:8-37), except that subsection

(c) allows non-brokers to resell at any price if that sale is made on the Internet.

Plaintiffs do not allege that Defendant limited the maximum price at which they resold

their individual-game tickets.  Plaintiffs fail to reveal the prices at which they sold tickets or to

adduce any evidence that Defendant sought to cap resale prices.  (A.C. ¶ 16).  No document cited

in the Amended Complaint contains a price restriction.  To the contrary, the insert included with

the "booklet" specifically allows season ticket holders to "set the price yourself" when they try to

resell their tickets.  (Weber Decl., Ex. 7).  Plaintiffs cannot show a violation of § 56:8-33.

2.  Any Claims Based On A Violation Of The "Spirit" Of § 56:8-33 Also Fail

Since they cannot plead a violation of the "letter" of § 56:8-33, Plaintiffs assert that

Defendant violated the "spirit [of] New Jersey law protecting internet ticket resales" and the

"implicit," "unencumbered ability to resell" of that provision.  (A.C. ¶¶ 19, 42).  No such terms

appear in the statute and the Court may not read into the statute words or terms that are not

present.  "If the language of a statute is clear, a court's task is complete. Courts may not rewrite a

plainly written law or presume that the Legislature intended something other than what it

expressed in plain words.  Thus, the literal words of a statute, if clear, mark the starting and

ending point of the analysis."  *In re Plan for Abolition of Council on Affordable Hous.*, 214 N.J.

444, 468 (2013) (internal citations omitted).

Reading § 56:8-33 as a whole, as New Jersey courts do, it is clear that subsection (c) only

creates a carve-out from the price restrictions in subsection (b).  *See Chasin v. Montclair State

Univ.*, 159 N.J. 418, 427 (1999).  Plaintiffs seem to assert that the "nothing shall" language in

subsection (c) is directed at entities like Defendant.  (A.C. ¶¶ 19-20).  This is not a valid

interpretation of subsection (c).  When read together with the prior clause ("Notwithstanding the

---

[13] Subsection (a) of § 56:8-33 is not relevant to this case.

provisions of subsection a. or b. of this section"), the "nothing shall limit the price for resale. . ." phrase in subsection (c) simply means that "*no language in this statute* shall limit the price for the resale. . . ." This statutory construct of a restriction, followed by an exception to the restriction that begins "Notwithstanding [the prior textual restriction], nothing shall . . ." is common in New Jersey law.[14] The word "nothing" in subsection (c) is not a reference to conduct by persons like Defendant, but rather a reference to the language of the statute itself.

Language elsewhere in the ticketing law confirms this conclusion. When the Legislature proscribes all persons from doing something related to ticket sales, it does so expressly, with reference to a "person." *See, e.g.,* N.J.S.A. § 56:8-34 ("**No person** shall resell . . . on any . . . sidewalk . . . owned by a place of entertainment in this State.") (emphasis added).[15] Thus, if the Legislature had intended for § 56:8-33(c) to bar all persons from taking certain actions, it would have used "no person." But the Legislature used "nothing" instead. "It is not the function of this Court to 'rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language.'" *DiProspero v. Penn*, 183 N.J. 477, 492 (2005) (alterations in original). There is no "unencumbered ability to resell" in the statute. There are clear encumbrances on the maximum price and method of resale for non-brokers, and stronger restrictions for brokers. Any claim based on a violation of an unwritten, implied term in the statute must fail.

**B.    Plaintiffs Fail To Meet Either The Rule 8 Or Rule 9(b) Pleading Standards For Nearly All Of Their NJCFA Claim**

"The capacity to mislead is the prime ingredient of all types of consumer fraud." *Cox v.*

---

[14] *See, e.g.,* N.J.S.A. § 40A:9-145.2(e), which states, following text creating certain requirements to serve as a tax collector in a municipality operating under a State fiscal year: "Notwithstanding the provisions of this subsection, nothing shall preclude a certified tax collector. . . from being appointed as a tax collector in a municipality operating under a State fiscal year." *See also* N.J.S.A. §§ 52:27D-310.2, 5:12-144.1(4).

[15] "Person" is defined as "corporations, companies, associations, societies, firms, partnerships and joint stock companies as well as individuals." N.J.S.A. § 56:8-26(c).

*Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994).  As a result, NJCFA claims "must meet the heightened pleading requirement of [Rule 9(b).]" *Tremco Can. Div.*, 2013 WL 2444076, at *2. *See also Ramon,* 2007 WL 604795, at *6 (dismissing NJCFA claim for failure to meet particularity requirements of Rule 9(b)).  "As interpreted and applied by the Third Circuit, Rule 9(b) requires 'plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Tremco Can. Div.*, 2013 WL 2444076, at *2 (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *Frederico*, 507 F.3d at 200.  Courts routinely dismiss NJCFA claims where, as here, they are based on little more than conclusory allegations of unconscionable business practices.  *See, e.g., Morris Cnty. Cardiology Consultants, PA v. Nw. Mut. Life Ins. Co.*, No. 08-308 (SRC), 2009 WL 3068260, at *2 (D.N.J. Sept. 21, 2009) (dismissing claim where allegations do "not rise to the level of an unconscionable commercial practice under the CFA and do not meet the particularity requirements of Rule 9(b)").

Instead of pleading fraud with particularity, Count III is devoid of detail concerning the alleged fraudulent acts.  While Plaintiffs make clear which acts they allege constitute breaches in Count I and Count II, they have failed to put Defendant on notice of what purported acts violated the NJCFA, other than possibly charging printing fees.  Instead of "injecting precision" into their NJCFA claim, Plaintiffs "reallege and incorporate by reference the allegations set forth above that relate to [Count III.]"  (A.C. ¶ 70).  They then recite the formulaic elements of an NJCFA claim without providing a single detail:  "[Plaintiffs] were misled and suffered ascertainable loss as a result of defendant's actions in violation of [the NJCFA.]" (A.C. ¶ 72).  "Defendant violated [the NJCFA] by engaging in unconscionable commercial practices, as alleged above." (A.C. ¶ 74).  Without any such detail, Count III should be dismissed.

## C.    Plaintiffs Have Failed To Plead An "Unlawful Practice"

Even if Defendant does try to guess as to which alleged acts Plaintiffs intended to assert

were "unconscionable commercial practices," none of the following acts in the Amended

Complaint constitute an "unlawful practice" as required by statute to support an NJCFA claim.

1. Not Offering Renewal Is A Purported Contractual Issue And Insufficient To Support An NJCFA Claim

Plaintiffs appear to base their NJCFA claim, in part, on not receiving the opportunity to

renew, because their asserted loss is being "unable to obtain the benefit that season ticket holders

obtain over purchasing individual tickets to each game." (A.C. ¶ 76).  In essence, their asserted

loss is not being a season ticket holder anymore.  But the act of not offering renewal is nothing

more than a breach of (an alleged) contract (A.C. ¶¶ 23, 53), which is not enough for an NJCFA

claim.  *See, e.g.*, *Slinko-Shevchuk v. Ocwen Fin. Corp.*, No. 13-5633, 2015 WL 1271963, at *6

(D.N.J. Mar. 18, 2015) (Cecchi, J.) ("'[A]ny breach of contract, is not per se unfair or

unconscionable,' even though 'any breach of . . . contract is unfair to the non-breaching party.'")

(quoting *Cox*, 138 N.J. at 18)).  For a breach to sustain a NJCFA claim, "substantial aggravating

circumstance[s]" must be present and must include some "bad faith or lack of fair dealing[.]"

*Cox*, 138 N.J. at 20.  Plaintiffs must allege facts that "demonstrate that the business behavior in

question stand[s] outside the norm of reasonable business practice in that it will victimize the

average consumer." *Venditto v. Vivint, Inc.*, No. 14-4357 (JLL), 2015 WL 926203, at *13-14

(D.N.J. Mar. 2, 2015) (dismissing NJCFA claim with prejudice where "dispute sounds in

contract—not consumer fraud") (citation and internal quotation omitted).

Here, Plaintiffs have not pled any additional facts that would show bad faith or lack of

fair dealing in connection with the denial of renewal – they only allege the violation of a

contractual right.  Where the "record is devoid of evidence that [Defendant] committed fraud,

made misrepresentations, or misled [Plaintiffs]", dismissal of the NJCFA claim is appropriate.

*Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998) (affirming dismissal of

NJCFA claim because "denial of insurance benefits to which the plaintiffs believed they were

entitled does not comprise an unconscionable commercial practice").

2.  <u>The Alleged Printing Fee Is Insufficient To Support An NJCFA Claim</u>

Plaintiffs also seem to allege that Defendant's charging them $1.95 to print their tickets online violated the NJCFA.  (A.C. ¶ 77).  Plaintiffs fail to allege how the imposition of this fee had the "capacity to mislead" them.  *Cox*, 138 N.J. at 17.  Of course, Plaintiffs were not required to print tickets.  If they were going to the game, they could use hard copy tickets.  If they were selling, they could sell the hard copy tickets, use NHL Ticket Exchange to sell without a fee, or pay the $1.95 fee to "print" an electronic version of the ticket for other use or resale.  Plaintiffs were charged the $1.95 fee during the 2012-13 season.  (A.C. ¶ 63).  Undeterred by this fee, Plaintiffs chose (after Defendant offered them the opportunity) to renew their tickets for the 2013-14 season, where they were charged the same fee again.  *Id.*  At no point do Plaintiffs allege that Defendant told them that they would not pay a fee.  They have alleged no facts showing how the fee could have misled them.  Thus, the fee cannot support an NJCFA claim.

**D.    Plaintiffs Fail To Show That They Suffered An Ascertainable Loss**

Count III must also be dismissed because Plaintiffs have failed to plead the required ascertainable loss.  *Lieberson v. Johnson & Johnson Consumer Cos.,* 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (dismissing NJCFA claim for failure to sufficiently plead ascertainable loss).  To properly plead an ascertainable loss, a plaintiff must allege facts showing "either out-of-pocket loss or a demonstration of loss in value."  *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 281 (D.N.J. 2011).  Importantly, the "certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable."  *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005).

With respect to loss, Plaintiffs only allege that they were "unable to obtain the benefit that season ticket holders obtain over purchasing individual tickets to each game."  (A.C. ¶ 76).  This is not enough to sustain an NJCFA claim.  Under the "demonstration of loss in value" loss theory, a plaintiff must plead "(1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one

received can be reasonably quantified." *Stewart v. Smart Balance, Inc.*, No. 11-6174 (JLL), 2012 WL 4168584, at *9-10 (D.N.J. June 26, 2012). To plead injury, a plaintiff must allege that he "received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect." *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) (granting a motion to dismiss for failure to plead injury-in-fact). Plaintiffs cannot make this allegation. They either attended, or had the right to attend, each Devils game at the Prudential Center in the 2013-14 season. That is all that they purchased. "[T]he plaintiff buys the ticket, of course, in order to see an event that is scheduled to occur on the ticket-seller's grounds[. The seller provides] only [a] license [to] the plaintiff to enter and view whatever event transpires." *Mayer v. Belichik*, 605 F.3d 223, 234 (3d Cir. 2010) (citation omitted).

New Jersey courts recognize another requirement (even at the pleading stage): plaintiffs must quantify their injury. *Lieberson*, 865 F. Supp. 2d at 541-42. "An actionable loss is not 'hypothetical or illusory.'" *Green*, 279 F.R.D. at 281 (quoting *Thiedemann*, 183 N.J. at 248). Rather, under the NJCFA Plaintiffs must "plead specific facts setting forth and defining the ascertainable loss suffered." *Id.* at 282 (internal citation omitted). This requires a high degree of particularity. *See Lieberson*, 865 F. Supp. 2d at 541-42 (finding insufficient allegations that defendant sold products for a premium of "at least $1.00" and comparable products cost at least 25% less where plaintiff did not allege the price she paid for the products).

Plaintiffs have not met this requirement. The only facts Plaintiffs plead at all related to their alleged ascertainable loss are that they were "unable to obtain the benefit that season ticket holders obtain over purchasing individual tickets to each game" and that they were charged printing fees "on numerous occasions." (A.C. ¶¶ 76-77). Plaintiffs offer no facts that show their alleged injury is "definite, certain and measurable," or that would allow the court to quantify their alleged injury. Plaintiffs do not even identify what benefit season ticket holders receive over purchasing tickets to individual games let alone attempt to quantify that benefit.

Similarly, Plaintiffs have not sufficiently quantified any alleged loss related to the printing fees. The allegation of the existence of the $1.95 fee (A.C. ¶ 29), does nothing to

quantify their alleged loss.  Plaintiffs plead no facts related to how many tickets they printed, or how much they actually paid as a result of these fees.  Just as the alleged $1.00 premium was insufficient to quantify an ascertainable loss in *Lieberson*, the allegation of a $1.95 fee is insufficient here.  *Lieberson*, 865 F. Supp. 2d at 541-42.  "Traditionally, to demonstrate a loss, a victim must simply supply an estimate of damages, calculated within a reasonable degree of certainty."  *Cox*, 138 N.J. at 21.  Plaintiffs neither provide an estimate nor plead facts to allow the Court to do so.  Without a properly pled ascertainable loss, Count III should be dismissed.

### E.     Plaintiffs Fail To Show Causation

The third element of an NJCFA claim is causation, which "requires plaintiff to prove that . . . unlawful consumer fraud caused his loss."  *Cox*, 138 N.J. at 23 (citation omitted); *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 474-75 & n.4 (1988) (agreeing with trial court's dismissal of NJCFA claim where there was no causation).  Plaintiffs must plead particularized facts to support the claim that the alleged consumer fraud caused the alleged injury.  *Jatras v. Bank of Am. Corp.*, No. 09-3107 (RBK), 2010 WL 5418912, at *6 (D.N.J. Dec. 23, 2010).  Allegations of causation that are conclusory statements or wholly speculative are insufficient to meet these requirements.  *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d. 508, 530 (D.N.J. 2011) (dismissing NJCFA claim because causation theory was "too speculative and attenuated to be cognizable").  Plaintiffs' sole allegation in this area is wholly conclusory and is the sort of bald assertion that is disregarded on a motion to dismiss. (A.C. ¶ 76: "As a proximate result of these violations of the Consumer Fraud Act, plaintiffs and the Class suffered ascertainable loss and other costs.")  Plaintiffs do not allege any sort of causal relationship between the alleged unconscionable practices and their unnamed, unspecified injury.

## IV.    THE DECLARATORY RELIEF CLAIM FAILS

Plaintiffs' claim for declaratory relief does not raise an independent claim.  It seeks "a declaration that the conduct of [Defendant] as described herein infringes on Plaintiffs' rights under New Jersey law to resell their single game tickets."  (A.C. ¶ 82).  Plaintiffs do not provide

any detail as to which New Jersey law provides such rights.  Count IV fails even if we interpret it as requesting a declaration that Defendant violated the NJCFA (including § 56:8-33).  Without any viable claims underlying the request for declaratory relief, there is no legal basis for declaratory relief.  *Von Nessi v. XM Satellite Radio Holdings, Inc.*, No. 07-2820 (PGS), 2008 WL 4447115, at *7 (D.N.J. Sept. 26, 2008) (declaratory judgment claim is "moot" where plaintiffs failed to state a claim for relief and could not recover under any asserted legal or equitable theories).  Here, Plaintiffs fail to state viable claims for relief, and do not point to another statutory provision which gives them "rights under New Jersey law."

Regardless of their other claims, Count IV also fails because all issues related to the claim for declaratory relief (*i.e.* purported violations of the NJCFA or the ticketing laws) would be resolved in the course of the current litigation without the need for a separate declaratory judgment.  *Kancor Americas, Inc. v. ATC Ingredients, Inc.*, No. 14-4107, 2015 WL 1530740, at *5 (D.N.J. Apr. 2, 2015).  Finally, this Court has held that declaratory judgment is not appropriate where no actual controversy exists because an underlying contractual relationship has already been terminated.  *Global Fresh Produce, Inc. v. Epicure Trading, Inc.*, No. 11-1270, 2012 WL 924326, at *3-4 (D.N.J. Mar. 16, 2012) (Cecchi, J.).  Plaintiffs allege that the relevant contractual relationship – established by the purchase of season tickets for the 2013-14 season – ended after that season, when Defendant did not offer Plaintiffs the opportunity to renew.  (A.C. ¶¶ 4-5, 60).  With the contract gone, declaratory judgment is not appropriate because there is no way it could affect the present behavior of contracting parties.  *See Id.*, at *4.

<u>CONCLUSION</u>

The Amended Complaint should be dismissed in its entirety.

Dated: August 28, 2015

Respectfully submitted,

**PROSKAUER ROSE LLP**

By:    ___/s/ Michelle A. Annese_____
Michelle A. Annese

One Newark Center
Newark, NJ  07102
Ph.:  (973) 274-3200
Fax: (973) 274-3299
mannese@proskauer.com

Kevin J. Perra*
David S. Mordkoff*
Eleven Times Square
New York, NY 10036
Ph.:  (212) 969-3000
Fax: (212) 969-2900
kperra@proskauer.com
dmordkoff@proskauer.com
*Admitted *pro hac vice*

*Attorneys for Defendant*