UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------x
:
REY OLSEN and ALEX OLSEN, :
individually and on behalf of all others :
similarly situated, : **AMENDED CLASS ACTION**
: **COMPLAINT**
:
 Plaintiffs, :
: Civil No.: 2:15-cv-02807-CCC-MF
 v. :
:
NEW JERSEY DEVILS, LLC, : JURY TRIAL DEMANDED
:
 Defendant. :
:
------------------------------------------------------x

Plaintiffs, Rey Olsen and Alex Olsen, individually and on behalf of all others similarly situated, as and for their complaint against defendant New Jersey Devils, LLC ("Devils"), allege as follows based upon their own personal knowledge as to their own actions and upon information and belief based upon the investigation of their counsel as to all other matters:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d), because there is the requisite diversity of citizenship between the plaintiff and/or at least one member of the purported class and defendant and because plaintiffs believe the aggregate amount in controversy exceeds $5 million.

2. Venue is proper in this District under 28 U.S.C. § 1391(a) because: (i) the conduct from which this cause of action arises occurred in this District; and (ii) defendant transacts business in this district.

## PARTIES

3. Plaintiff Rey Olsen is a resident of the state of New York who has purchased season tickets to the Devils' since 2012 through the end of the 2013-2014 hockey season when the Devils cancelled his season tickets.

4. Plaintiff Alex Olsen is a resident of the state of New York who has purchased season tickets to the Devils' since 2012 through the end of the 2013-2014 hockey season when the Devils cancelled his season tickets.

5. Defendant New Jersey Devils, LLC is a limited liability company registered with the New Jersey Division of Revenue to conduct business in New Jersey, and operates The "New Jersey Devils" ("Devils"), a professional hockey franchise of the National Hockey League, with its registered agent located in West Trenton, Mercer County, New Jersey.

## CLASS ACTION ALLEGATIONS

6. Plaintiffs bring this action in their own behalf and in a representative capacity on behalf of all persons similarly situated as a class described as all persons and entities who purchased season tickets to the Devils from 2010 through the present (the "Class Period").

7. Plaintiffs seek certification of the following class and subclasses under Fed. R. Civ. P. 23(b)(2) and (b)(3):

    a. The Declaratory Judgment Class: All season ticket subscribers to the Devils.

    b. Subclass 1: All season ticket subscribers whose season ticket subscriptions were not renewed because of their retail resale of individual game tickets.

    c. Subclass 2: All season ticket holders who were charged printing or other extra-contractual fees imposed upon season ticket holder whom the Devils identified as competing resellers.

2

8. The members of the Class and sub-classes (collectively "classes") are so numerous and geographically dispersed that joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs believe in good faith that the Class includes over ten thousand persons and entities which purchased Devils season tickets. Class members are identifiable from records maintained by Defendant.

9. Plaintiffs' claims are typical of absent Class members' claims, as their claims arise from the same factual background and legal theories as the claims of the classes they seek to represent.

10. Plaintiffs will fairly and adequately protect the Classes' interests and have retained counsel competent and experienced in class-action litigation. Plaintiffs' interests are consistent with, and not antagonistic to, absent class members' interests.

11. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation effectively makes it impossible for individual Class members to seek redress for the wrongs complained of herein.

12. There are no unusual difficulties likely to be encountered in the management of this action as a class suit that could not be managed by this Court and a class action is superior to other methods for the adjudication of the claims.

13. The questions of law and fact common to the claims of each Class member overwhelmingly predominate over any questions of law or fact affecting only individual members of the Classes. Questions of law and fact common to the Class and subclasses include, but are not necessarily limited to, the following:

    a. Whether Defendants' conduct breached the terms of the contract;

b. Whether Defendants' conduct breached the implied covenant of good faith and fair dealing;

c. Whether Defendant's actions constituted practices in breach of New Jersey Consumer Fraud Act, NJSA 56:8-1, et seq.;

d. Whether Defendant's acts and policies and the term and conditions it imposes upon Plaintiffs and other season ticket subscribers violated New Jersey statutes governing tickets sales and resales, *i.e.* NJSA 56:8-33;

e. Whether Defendant's breaches and violations caused Plaintiffs and the Class to suffer damages; and

f. The amount of Plaintiffs' and the Classes' damages.

## SUBSTANTIVE ALLEGATIONS

14. The Olsens were season ticket holders to New Jersey Devils hockey games.

15. Like many season ticket holders, the Olsens were unable to attend each and every Devils home game, given that there are 40 home games every season (not counting exhibitions) within a span of the six-month hockey regular season. In many weeks of the season, there are more than two games scheduled per week.

16. To avoid wasting tickets, a season ticket subscriber may attempt to sell tickets to games he/she/it cannot attend.

17. The Olsens have sold and/or attempted to resell some of their season tickets into the retail (secondary) market.

18. The most efficient way for a season ticket subscriber to sell unusable tickets is through websites that connect buyers and sellers directly, such as "Stubhub" which is secure and user-friendly. In 2014, Consumer Reports awarded Stubhub a "Nice" designation on its year-end "Naughty & Nice List." *See* http://www.consumerreports.org/cro/news/2014/11/naughty-and-nice-list-2014-bad-and-good-company-policies/index.htm (last accessed February 24, 2015).

4

Since Stubhub offers reliable service and safeguards to minimize the opportunity for fraud in the secondary sale of tickets, Devils have no justifiable reason to preclude, or penalize, season ticket holders who sell Devils tickets on Stubhub.

19. New Jersey law allows season tickets subscribers such as Plaintiffs and class members an unlimited right to sell tickets online. Implicit in the law that nothing shall limit the price for resale is the unencumbered ability to resell.

20. New Jersey law provides in pertinent part:

　　(i)　N.J.S.A. § re-sale 56:8-33 (c) states that **"nothing** shall limit the price for the resale or purchase of a ticket for admission to a place of entertainment sold by any person other than a registered ticket broker, provided such resale or purchase is made through an Internet web site." (emphasis added).

21. The published legislative intent of the law explains how the law was intended to work:

　　(i)　Legislative Intent: "Under current law, individuals may not resell tickets for admission to a place of entertainment in excess of 20% of the ticket price or $3, whichever is greater, plus lawful taxes. Registered ticket brokers and *season ticket holders* are allowed to resell tickets at a premium up to 50% of the price paid to acquire the ticket, plus lawful taxes. As amended by the committee, this bill would lift all caps on the price for the resale or purchase of a ticket sold by *a person other than a registered ticket broker*, as long as the sale is made through an *Internet web site*. In doing so, this bill would level the playing field for citizens of this State trying to relieve themselves of extra tickets, which would otherwise go unused. Currently, New Jersey residents face an unfair disadvantage when competing with sellers/rom surrounding states, who are not restricted by price caps on tickets resold via the Internet." (emphasis added). The bill would also remove the current statutory provision that the face of a ticket include language indicating the maximum premium at which the ticket may be resold. *See* New Jersey Assembly Committee Statement, 213th Legislature, March 10, 2008.

　　(ii)　The Assembly Committee Amendments...

　　　　a.　Exclude from the definition of "ticket broker" individuals who are not regularly engaged in the business of reselling

5

    tickets, who resell less than 30 tickets during a one year period, and who obtained the tickets for their own use or the use of family, friends, or acquaintances;

  b. Keep intact the requirement for each place of entertainment to print the ticket price charged for an event on any advertisement for that event; and

  c. ***Exempt season ticket holders from their current price caps by treating as other individuals who are not ticket brokers.***

  22. According to the Devils, the terms and conditions of season ticket ownership consist of such terms and conditions as appear on the face of the "invoice" and the reverse side of each ticket. Nothing in those terms and conditions prohibits or limits a season ticket holders rights to transfer tickets.

  23. Devils distribute a booklet that lists benefits of a season ticket subscription which, in pertinent part, states:

> "Renewal Benefits & Season Ticket Seat Upgrades"
> "at the end of the 2013-2014 seasons, Devils Season Ticket Holders who renew their seats by the renewal will qualify for "VALUE, ACCESS and EXPERIENCE" benefits and have the opportunity to maintain their existing seat locations, or upgrade into open seat locations, before the general public."

This constitutes part of the terms and conditions of the Season Ticket Subscriber Contract between plaintiffs, the Class and defendant and grants plaintiffs and other season ticket holders an automatic right to renewal.

  24. New Jersey law has recognized that a right to renew season tickets is an implied right under the season ticket subscription contract. Applicable law also recognized that the "license" nature of a season ticket agreement does not permit a team to revoke season tickets at will. New Jersey common law and statutory law supplement the explicit terms and conditions of

6

New Jersey's Supreme Court long ago articulated an implied condition in every contract as follows:

> [I]n every contract there is an implied covenant of good faith and fair dealing. As a corollary to that proposition it is certainly reasonable to imply that neither party to a contract shall injure the right of the other to receive the fruits of the agreement.

*Onderdonk v. Presbyterian Homes of NJ*, 85 N.J. 171, 182 (1981). More recent New Jersey law is even more explicit: "Good faith emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Fehr v. Algard*, 2011 WL 13670 (N.J. Super A.D. 2011).

25. The Devils, like most major league sports teams, are desperate to control the secondary market for game tickets because the consumer has the choice of purchasing from a secondary reseller or the Devils box office. The Devils wish to restrain competition to its box office sales. Accordingly, the Devils have made the "NHL Ticket Exchange" their exclusive "official" ticket re-seller. The Ticket Exchange is operated by Ticketmaster, which is the "exclusive ticketing provider for all League events" according to the Ticketmaster November 5, 2013 press release PR Newswire "National Hockey League Renews Agreement With Ticketmaster." Ticketmaster is the "official resale partner" of the NHL and other sports leagues and venues. . . including the NFL, NBA, New York Yankees, Los Angeles Angels and major metropolitan area sports venues such as Madison Square Garden, (home of the NHL New York Rangers); the Prudential Center (home of the NHL Devils) and Nassau Coliseum (home of the NHL Islanders).

26. The Devils never disclosed that season ticket holders that resold their ticket would or could be treated differently.

27. To gain control over the resale market for Devils game ticket, Defendant has

resorted to illegal and anticompetitive means against season ticket holders it considered "resellers," such as:

- Prohibiting or obstructing plaintiffs and other season ticket subscribers from selling individual or blocks of game tickets;

- Imposing extra contractual fees on season ticket holders;

- Refusing to renew season ticket subscriptions of plaintiffs and other season ticket holders who sell individual game tickets into the secondary market;

- Prohibiting ticket print outs at the discretion of the season ticket holder and limiting printing of tickets which limits a ticket holders' ability to re-sell their tickets.

### Printing Fees and Printing Lockouts

28.     The Devils unfairly punished resellers that utilized unofficial markets (e.g., Stubhub) to sell their tickets.

29.     The Devils took advantage of ticket buyers' need for to print tickets in order to hamper trade in secondary markets. The Devils did this in two ways. First, the Devils prohibited ticket buyers from printing tickets until 48 hours before the event. Second, the Devils forced all season ticket holders it labeled as resellers to pay $1.95 per printed ticket. The Devils began charging resellers immediately after it instituted the printing fee.

30.     The "official" reseller, NHL Ticket Exchange, allowed for buyers to print at will and did not charge a printing fee. The Devils imposed hurdles on the otherwise safe and efficient secondary market in order to prop up its own "official" reseller.

31.     By exercising its power to limit the delivery of tickets, the Devils intentionally undermined the secondary market to gain control of it for itself.

32.     As a result of the Devils' anticompetitive and unfair conduct, the Olsens could not compete with the Devils when attempting to sell tickets they were not going to use. Their unused

8

tickets sold for less and at times went unused.

### Denying Resellers Upgrades Granted to Other Season Ticket Holders

33. The Devils denied all resellers certain benefits that were granted to regular season ticket holders. These benefits included: (a) upgraded seats; (b) free jerseys or other memorabilia; (c) extra tickets; and (d) food vouchers.

34. The Olsens, like other resellers, were not granted these perks because they resold some of the tickets that they had purchased.

### Denying Resellers the Right to Renew Their Season Tickets

35. The Devils had allows allowed and encouraged season ticket holders to sell tickets they could not use. It is one of the benefits of being a season ticket holder. *See, e.g.*, Exhibit A ("[Y]ou can sell ticket that you can't use . . ."); 2013-14 Renewal Package, attached as Exhibit B, at 2 ("exclusive benefit" of being a season ticket holder is the "[u]ltimate flexibility to sell tickets to games you can't attend[.]").

36. Prior to the 2014-2015 season, the Olsens received a letter from the Devils, signed by Hugh Weber, stating that it was "making important changes to [its] season ticket program for the 2014-15 season[.]"

37. The letter went on to state that the Devils "will no longer generally be offering season tickets to accounts, such as yours, that our records show have engaged in the resale of tickets for 50% or more of the home games that have been played thus far during the 2013-14 Season." Plaintiffs were thus denied their right to renew their season tickets.

38. The Devils therefore implemented this "important change" retroactively, to the detriment of Plaintiffs.

39. All resellers that the Devils believed had sold more than half of their tickets were

9

issued this letter and denied the right to renew their season tickets.

40. Since the beginning of the 2014-15 season then, the Devils have weeded out a substantial number of the resellers it competes with on Stubhub and on its official NHL Ticket Exchange.

41. Unhindered by competition, the Devils have now inflated the prices of the tickets it sells through its brokers in the secondary market and on the NHL Ticket Exchange.

42. The above conduct is contrary to the letter and spirit of the Devils' agreements with its season ticket holders, as well as New Jersey law protecting internet ticket resales from unlawful obstruction and attempts at market control and monopoly such as engaged in by Devils here.

43. Control of the secondary ticket market allows Devils to control pricing over their own inventory of game tickets by restricting supply of game tickets and impinges on Plaintiffs' and Class Members' contractual renewal rights and legal rights to sell tickets.

44. Accordingly, the Devils' acts, policies, terms and conditions regarding season ticket holders' rights to re-sell tickets are contrary to the contract and in violation of several statutes of the New Jersey Consumer Fraud Act pertaining to entertainment event tickets.

## CLAIMS FOR RELIEF

## COUNT I

### Breach of Contract

45. Plaintiffs reallege and incorporate by reference the allegations set forth above that relate to this count.

46. The Devils have always permitted season ticket holders the right to renew their season tickets.

47. In purchasing season tickets, it is understood between the parties that, in purchasing season tickets, a season ticket holder may renew their season tickets for subsequent seasons.

48. Indeed, without this benefit, few season ticket holders would choose to purchase season tickets because the benefits of being a season ticket holder increase with the number of years one holds season tickets.

49. The Devils represent to season ticket holders that they may renew, stating:

> As a Season Ticket Holder, you are the heart of the Devils family and a huge part of creating home ice advantage night in and night out. Your support is what carries us and your commitment is unmatched. Consider this website your Season Ticket Holder fan guide for the 2014-2015 season. Just use the links below to navigate thru 2014-2015 Renewal information. . . .

2014-15 Renewal Package, attached as Exhibit C, *also available at* http://devils.nhl.com/club/page.htm?id=96621#youreteam (last accessed July 10, 2015). Below this paragraph, season ticket holders may "Click Here to Renew Now." *Id.*

50. The Devils 2013-14 Renewal Package, attached as Exhibit B, makes clear that renewal is a season ticket holder's right. It states,

> We are pleased to present you with *your* 2013-14 renewal package, which rewards you for the loyalty and passion you show throughout the season. As a returning Season Ticket Account Holder, you may select the Value, Access and Experience benefits that are most important to you, your family or business. Additionally, given the increased demand for Devils tickets, *your Seat Upgrade and Relocation Event this season has become an even more valuable benefit*. This event will give you the option to stay in your existing seats, or move into any and all open and available Season Ticket locations that are not renewed by the April 5th Deadline. *Priority access to these seat locations will once again be based on your tenure.*

Exhibit B, at 2 (emphasis added).

11

51. The 2013-14 Renewal Package further informs season ticket holders that "Renewing your 2013-14 season tickets is simple. You . . . [may] renew online, or you may fill out the enclosed ticket invoice and mail it back[.]" *Id.* at 7. After renewing, the Devils ensure season ticket holders that their "seats will be protected." *Id.*

52. By annually presenting renewal to season ticket holders as a matter of course, by rewarding season ticket holders' tenure as season ticket holders, and by suggesting season tickets holders' "ownership" of a seat (*see, e.g.*, Exhibit C at 2), the Devils represent to potential season ticket holders that there is a right to renewal that comes with the season tickets.

53. By depriving the Olsens and members of the Class of this right to renew for having resold their tickets on a secondary market, the Devils breached the contract.

## COUNT II

### Breach of the Implied Covenant of Good Faith and Fair Dealing

54. Plaintiffs reallege and incorporate by reference the allegations set forth above that relate to this count.

55. A covenant of good faith and fair dealing is implied in every contract in New Jersey.

56. A party's performance under a contract may breach that implied covenant even if that performance does not violate a pertinent express term.

57. A party may breach the implied covenant of good faith and fair dealing by exercising its discretion in an unreasonable or arbitrary manner, or a manner inconsistent with the reasonable expectations of the parties.

58. There is no term in the contract between the Devils and Plaintiffs that permits the Devils to stop Plaintiffs from renewing their season tickets.

12

59. There is no term in the contract between the Devils and Plaintiffs prohibiting Plaintiffs from selling the season tickets that they could not use.

60. Plaintiffs reasonably expected that they could sell tickets that they purchased which would otherwise go unused. Indeed, it was not until the Devil's "important changes to [its] season ticket program[,]" which terminated Plaintiffs' right to renew, that the Devils had disclosed any negative consequences to selling individual tickets.

61. Plaintiffs reasonably expected that they would be able to renew their season tickets.

62. The Devils restricted ticket re-sales in contravention of the reasonable expectations of the parties, by prohibiting ticket purchasers from printing tickets until 48 hours prior to the event.

63. The Devils restricted ticket re-sales in contravention of the reasonable expectations of the parties also by imposing a $1.95 printing fee for ticket printing. This fee was imposed arbitrarily, as the Devils only charged it against those season ticket holders it deemed "re-sellers." The Olsens were charged these fees in the 2012-2013 season and the 2013-2014 season.

64. After refusing to renew resellers' season tickets, beginning in the 2014-2015 season, the Devils stopped imposing printing fees entirely.

65. Beginning in the 2013-2014 season, the Devils used a ticket broker to sell tickets on Stubhub. By imposing printing fees and restricting buyers' ability to print tickets, the Devils sought to marginalize resellers and ultimately push them out of the market so as to monopolize ticket sales to Devils events.

66. Since refusing to renew resellers' season tickets, the Devils have obtained a

13

monopoly. The prices of the tickets the Devils now sell through Stubhub are grossly inflated. These profits were possible only through the Devils' unfair and bad faith elimination of the competition.

67. By refusing to renew the season tickets of those who resold their tickets and also by arbitrarily charging only resellers with printing fees, the Devils abused their authority under the contract to pursue the improper purpose of edging out its competition in ticket sales. These actions constitute breaches of the implied covenant of good faith and fair dealing.

68. After to refusing to renew the Olsens' and the Class's season tickets, during the 2014-2015 season, the Devils and/or its exclusive broker, were the sellers of the majority of tickets on Stubhub as a result of their unlawful and anticompetitive conduct.

69. The Devils also exercised discretion under the contract in bad faith to withhold from resellers the benefits and upgrades that were given to other season ticket holders. These benefits and upgrades include: (a) upgrading ticket seat location; (b) free jerseys or other memorabilia; (c) extra tickets; (d) food vouchers. By providing these benefits to some season ticket holders but not those it labeled as resellers, the Devils exercised its discretion in bad faith to marginalize and retaliate against resellers to get a stronger hold of the market. This conduct constitutes a breach of the implied covenant of good faith and fair dealing.

## COUNT III

### New Jersey Consumer Fraud Act

70. Plaintiffs reallege and incorporate by reference the allegations set forth above that relate to this Count.

71. Defendant, in its capacity as a Seller is a "person" for the purposes of the Consumer Fraud Act, as codified in N.J.S.A. 56:8-1, *et seq.*

14

72. Plaintiffs and the other members of the Class were misled and suffered ascertainable loss as a result of Defendant's actions in violation of the Consumer Fraud Act.

73. The services provided by defendant and used by plaintiffs and the Class are "merchandise" as defined in N.J.S.A. 56:8-1(c).

74. Defendant violated the Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, by engaging in unconscionable commercial practices, as alleged above.

75. Such unconscionable commercial practices make defendant liable to Plaintiffs and the Class under N.J.S.A. 56:8-2, which provides that "[a]ny person violating the provisions of the act shall be liable for a refund of all moneys acquired by means of any practice declared to be unlawful."

76. As a proximate result of these violations of the Consumer Fraud Act, Plaintiffs and the Class suffered ascertainable economic loss and other costs. Plaintiffs were unable to obtain the benefit that season ticket holders obtain over purchasing individual tickets to each game.

77. The Devils also arbitrarily and unfairly charged Plaintiffs printing fees on numerous occasions to eliminate Plaintiffs and other resellers as competition.

78. Defendant is further liable to Plaintiffs and the Class for treble damages under N.J.S.A. 56:8-13, 19.

79. Plaintiffs and the Class are also entitled to recover attorney's fees and costs, as well as treble damages under N.J.S.A. 56:8-19.

## COUNT IV

### (For Declaratory Relief That The Devils Restrictions Against Ticket Resales By Season Ticket Subscribers Violates New Jersey Statutes)

80. Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully

pled here that relate to this Count.

81. Plaintiffs repeat and reallege each and every allegation of this Complaint as through fully set forth herein.

82. Plaintiffs seek a declaration that the conduct of the Devils as described herein infringes on Plaintiffs' rights under New Jersey law to resell their single game tickets.

83. There is a present controversy among Plaintiffs and Defendant on this issue that requires resolution.

**WHEREFORE**, Plaintiffs demand, individually and on behalf of the Classes, monetary damages from Defendant.

### **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on their own behalf and on behalf of the Class, pray for judgment:

(a) For certification of this matter as a class action with the class and subclasses defined pursuant to the definitions proposed in this Complaint, *supra*, appointing the named plaintiffs as class representatives and appointing Squitieri & Fearon, LLP as class counsel;

(b) For injunctive relief prohibiting defendant from future violations of the CFA and New Jersey ticket reselling laws;

(c) For a declaratory judgment that the defendant violated the CFA and ticket reselling laws;

(d) For reasonable attorneys' fees and costs of suit in connection with this action pursuant to N.J.S.A. 56:8-19 and all other applicable statutes;

(e) For pre-judgment and post-judgment interest; and

For such other and further relief, including general relief, as Plaintiffs and all other

16

similarly situated may be entitled or as the Court deems equitable and just.

Dated: July 31, 2015 　　　　　　　　　　SQUITIERI & FEARON, LLP

　　　　　　　　　　　　　　　　　　　By: /s/   Olimpio Lee Squitieri
　　　　　　　　　　　　　　　　　　　　　　Olimpio Lee Squitieri
　　　　　　　　　　　　　　　　　　　2600 Kennedy Boulevard
　　　　　　　　　　　　　　　　　　　Suite 1K
　　　　　　　　　　　　　　　　　　　Jersey City, New Jersey 07306
　　　　　　　　　　　　　　　　　　　(201) 200-0900

　　　　　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　　32 East 57th Street
　　　　　　　　　　　　　　　　　　　12th Floor
　　　　　　　　　　　　　　　　　　　New York, New York 10022
　　　　　　　　　　　　　　　　　　　(212) 421-6492

　　　　　　　　　　　　　　　　　　　Attorney for Plaintiffs

17