PROSKAUER ROSE LLP
Michelle A. Annese
One Newark Center
Newark, NJ  07102
Ph.: (973) 274-3200
Fax: (973) 274-3299
mannese@proskauer.com

Kevin J. Perra*
David S. Mordkoff*
Eleven Times Square
New York, NY 10036
Ph.: (212) 969-3000
Fax: (212) 969-2900
kperra@proskauer.com
dmordkoff@proskauer.com
*Admitted *pro hac vice*

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| REY OLSEN and ALEX OLSEN, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>                          v.<br><br>NEW JERSEY DEVILS, LLC,<br><br>           Defendant. | Civil Action No. 15-cv-2807 (CCC) (MF)<br><br>*Document Electronically Filed*<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF DEFENDANT NEW JERSEY DEVILS, LLC'S
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

## **TABLE OF CONTENTS**

                                               **Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .................................................................................................................................2

I.  THERE IS NO IMPLIED "RENEWAL RIGHT" CONTRACT ........................................2

    A.  Plaintiffs Have Not Alleged Facts Sufficient To Create A Contract That Obligated Defendant To Offer Them The Opportunity To Renew ..........................2

    B.  Plaintiffs May Not Rely On Alleged Acts Concerning Other Season Ticket Holders To Establish An Implied Contract With Defendant ..................................3

    C.  The Cases Cited By Plaintiffs Are Not "Near Identical" ..........................................4

    D.  Plaintiffs Have Not Sufficiently Pled Damages For A Breach Of Contract ............6

II.  THE IMPLIED COVENANT CLAIM IS DUPLICATIVE OF COUNT I AND SHOULD BE DISMISSED .................................................................................................7

III.  THE NEW JERSEY CONSUMER FRAUD ACT CLAIM FAILS ....................................8

    A.  Any NJCFA Claim Based On N.J.S.A. § 56:8-33 Fails ...........................................8

    B.  Rule 9(b) Applies To Plaintiffs' Unconscionable Commercial Practice Claim .........................................................................................................................8

    C.  "Savings" For An Unpurchased Product Are Not An "Ascertainable Loss" ..........9

    D.  No Causation Between Alleged NJCFA Violations and Ascertainable Loss – The Alleged Loss Was Caused By The Denial Of Renewal, Which Is Insufficient For An NJCFA Claim ..........................................................................11

IV.  DECLARATORY JUDGMENT CLAIM MUST BE DISMISSED ..................................11

CONCLUSION ............................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baer v. Chase*,
    392 F.3d 609 (3d Cir. 2004).........................................................................................................3

*Beder v. Cleveland Browns, Inc.*,
    717 N.E.2d 716 (Ohio Ct. App. 1998)........................................................................................6

*Borough of W. Caldwell v. Borough of Caldwell*,
    26 N.J. 9 (1958) .......................................................................................................................2, 3

*Brotherson v. Professional Basketball Club, L.L.C.*,
    604 F. Supp. 2d 1276 (W.D. Wash. 2009)..........................................................................4, 6, 7

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Associates*,
    182 N.J. 210 (2005) .....................................................................................................................8

*Cox v. Sears Roebuck & Co.*,
    138 N.J. 2 (1994) ...................................................................................................................9, 11

*Diaz v. Bullock*,
    No. 13-5192, 2014 WL 5100560 (D.N.J. Oct. 10, 2014) ...........................................................8

*Disanto v. Best Buy Stores, L.P.*,
    No. 09-4727, 2010 WL 3522790 (D.N.J. Aug. 31, 2010) ........................................................10

*Fenwick v. Kay Am. Jeep, Inc.*,
    72 N.J. 372 (1977) ......................................................................................................................9

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007).........................................................................................................6

*Green v. Green Mountain Coffee Roasters, Inc.*,
    279 F.R.D. 275 (D.N.J. 2011)...................................................................................................10

*Griglak v. CTX Mortg. Co., LLC*,
    No. 09-5247, 2010 WL 1424023 (D.N.J. Apr. 8, 2010).........................................................7, 8

*Hahn v. OnBoard LLC*,
    No. 09-3639, 2009 WL 4508580 (D.N.J. Nov. 16, 2009) ..........................................................7

*In re I.D. Craig Serv. Corp.*,
    138 B.R. 490 (Bankr. W.D. Pa. 1992)...............................................................................4, 5, 6

*In re Platt*,
   292 B.R. 12 (Bankr. D. Mass. 2003) ..................................................................................6

*Intelnet Int'l Corp. v. ITT Corp.*,
   2006 WL 2192030 (N.J. Super. Ct. App. Div. Aug. 4, 2006) ....................................................4

*Katz v. Live Nation, Inc.*,
   No. 09-3740, 2010 WL 2539686 (D.N.J. June 17, 2010)......................................................8, 9

*Kully v. Goldman*,
   305 N.W.2d 800 (Neb. 1981)..............................................................................................5, 6

*Morris Cnty. Cardiology Consultants, PA v. Nw. Mut. Life Ins. Co.*,
   No. 08-0030, 2009 WL 3068260 (D.N.J. Sept. 21, 2009)........................................................9

*Oshinsky v. N.Y. Football Giants, Inc.*,
   No. 09-1186, 2009 WL 4120237 (D.N.J. Nov. 17, 2009) ....................................................5, 6

*Pacholec v. Home Depot USA, Inc.*,
   No. 06-0827, 2006 WL 2792788 (D.N.J. Sept. 26, 2006)........................................................9

*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*,
   836 F.2d 173 (3d Cir. 1988)................................................................................................2, 6

*Slinko-Shevchuk v. Ocwen Fin. Corp.*,
   No. 13-5633, 2015 WL 1271963 (D.N.J. Mar. 18, 2015) ......................................................11

*Thiedemann v. Mercedes-Benz USA, LLC*,
   183 N.J. 234 (2005) ..............................................................................................................10

*Van Holt v. Liberty Mut. Fire Ins. Co.*,
   163 F.3d 161 (3d Cir. 1998).................................................................................................11

Defendant New Jersey Devils, LLC ("Defendant" or "Devils") respectfully submits this reply in support of its motion to dismiss (Doc. No. 17) the Amended Class Action Complaint ("Amended Complaint" or "A.C.") and in response to the opposition brief (Doc. No. 18, "Opp. Br.") filed by Plaintiffs Rey and Alex Olsen (collectively, "Plaintiffs" or the "Olsens").[1]

## PRELIMINARY STATEMENT

The gravamen of the Amended Complaint is that Plaintiffs' purchase of season tickets for at most two seasons created a binding and perpetual obligation for Defendant to offer them the opportunity to purchase tickets for subsequent seasons. Nowhere in their brief do Plaintiffs assert – much less demonstrate – that a writing expresses such an obligation. Plaintiffs instead argue that an implied contract somehow arose through the conduct of the parties. (Opp. Br. at 9). But the Olsens fail to allege any specific conduct of the Devils vis-à-vis the Olsens to support the notion that an implied contract arose through such conduct. Indeed, all that the Olsens can really point to is the allegation that they renewed their season tickets *once*. Clearly, that is not enough to create the implied, perpetual rights that form the basis of the Olsens' contract claims.

Perhaps realizing the absurdity of arguing that offering renewal in one, single instance bound Defendant to do so forever, Plaintiffs try to rely on Defendant's conduct with respect to other season ticket holders to establish the existence of an implied contract. But what Defendant did with non-parties cannot possibly create an implied contract between the Devils and the Olsens, and has no bearing on the rights and obligations that exist between the parties.

Having again recognized the deficiencies of their pleading, Plaintiffs attempt to amend the Amended Complaint not through motion practice (as they did before, Doc. No. 14) but through their opposition brief. Their brief is rife with allegations and lawyer arguments that appear nowhere in the Amended Complaint. Of course, this is not permitted. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."

---

[1] Defendant's moving brief in support of its motion to dismiss (Doc. No. 17-1) is cited herein as "Moving Br." The Declarations of David Mordkoff (Doc. No. 17-2) and Hugh Weber (Doc. No. 17-9) in support of the motion are respectively cited as "Mordkoff Decl." and "Weber Decl."

*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). In particular, Plaintiffs try to salvage their breach of contract claim by introducing the concept of lost "savings" that they claim they would have received if they bought season tickets for the 2014-15 season. But nowhere in the Amended Complaint do Plaintiffs allege facts necessary to support this or any other damage theory. As discussed in detail below, looking at the actual allegations in the Amended Complaint – and not the new "facts" and lawyer arguments contained in their brief – Plaintiffs have failed to plead claims upon which relief can be granted.

## ARGUMENT

### I.   THERE IS NO IMPLIED "RENEWAL RIGHT" CONTRACT

#### A.   Plaintiffs Have Not Alleged Facts Sufficient To Create A Contract That Obligated Defendant To Offer Them The Opportunity To Renew

As noted previously (Moving Br. at 8-11), none of the documents referenced in the Amended Complaint contains an express term obligating Defendant to offer Plaintiffs the opportunity to renew. Plaintiffs concede that their purported renewal right is not express, but rather exists as part of an implied contract. (Opp. Br. at 9). "The true implied contract consists of an obligation arising from mutual agreement and intent to promise but where the agreement and promise have not been expressed in words[.]" *Borough of W. Caldwell v. Borough of Caldwell*, 26 N.J. 9, 29 (1958). But the conduct that Plaintiffs argue created "an implied contract between the Defendant and the Olsens" is simply not enough to state a claim.[2]

A quick review of the alleged facts is important here: Alex Olsen purchased a full-season ticket package for the 2012-13 season. (Weber Decl. Ex. 1). Rey Olsen purchased a partial-season package for the 2012-13 season. (Weber Decl. Ex. 2). Defendant offered both Plaintiffs the opportunity to renew for the 2013-14 season by sending them the 2013-14 Renewal Package, which also contains terms of benefits available to season ticket buyers. (A.C. Ex. B). Both

---

[2] Plaintiffs argue that "by annually presenting renewal as a matter of course, by rewarding season ticket holders' tenure as season ticket holders, and by suggesting ticket holders' ownership of their seats[,]" Defendant created an implied renewal right. (Opp. Br. at 9).

2

Plaintiffs purchased full-season ticket packages for the 2013-14 season. (A.C. ¶¶ 3-4, 14).

According to Plaintiffs, this one-time renewal is evidence of "mutual agreement and intent to promise" a permanent renewal right.[3] But offering renewal in one season does not create any agreement for a subsequent season. Neither does awarding benefits based on tenure. Plaintiffs' vague allegations about the Devils "suggesting ticket holders' ownership" – apparently based on using the word "your" or "their" in ticketing materials (A.C. ¶50, Opp. Br. at 15-16) – does not demonstrate intent to promise a renewal right either. Neither the writings nor the course of conduct between the parties can be reasonably interpreted as showing "agreement and intent to promise" to offer renewal in perpetuity.

### B. Plaintiffs May Not Rely On Alleged Acts Concerning Other Season Ticket Holders To Establish An Implied Contract With Defendant

Recognizing that the parties' course of conduct is not enough to create an implied renewal contract, Plaintiffs argue that "Defendant's conduct toward other season ticket holders is germane to the issue of implied contract[.]" (Opp. Br. at 13). But, that is not how implied contracts work. Only the conduct of the parties to a purported implied contract creates the terms and scope of that contract. Put differently, the only parties who can make an implied contract between the Olsens and the Devils are the Olsens and the Devils themselves. "Contracts are . . . 'implied' when *the parties* do not state their terms. The distinction is based not on the contracts' legal effect but on the way *the parties* manifest their *mutual assent*." *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004) (emphasis added). "An implied-in-fact contract [arises] from mutual agreement and intent to promise, but in circumstances in which the agreement and promise have not been verbally expressed. *The agreement is rather inferred from the conduct of the parties*." *Id.* (emphasis added). Such agreement is not inferred from conduct with non-parties, just as non-parties are not bound by others' contracts. "As a general rule, contract obligations are limited to

---

[3] Plaintiffs argue that one renewal created a perpetual obligation to offer renewal every year. But, "[p]erpetual contractual performance is not favored in the law; and a construction affirming a right in perpetuity is to be avoided unless given in clear and peremptory terms." *W. Caldwell*, 26 N.J. at 29. No such "terms" are implied by the conduct alleged in the Amended Complaint.

3

the parties making them, and only parties to contracts are liable for their breach." *Intelnet Int'l Corp. v. ITT Corp.*, 2006 WL 2192030, at *8 (N.J. Super. Ct. App. Div. Aug. 4, 2006). Plaintiffs may not rely on Defendant's alleged conduct with other season ticket holders (Opp. Br. at 9, 13) to set the terms of an implied contract between Plaintiffs and Defendant.

### C. The Cases Cited By Plaintiffs Are Not "Near Identical"

Plaintiffs incorrectly assert that three cases are "near identical" to the situation here. (Opp. Br. at 10). There are very important differences between each of those cases and the alleged facts in this one. Neither *Brotherson v. Professional Basketball Club, L.L.C.*, 604 F. Supp. 2d 1276 (W.D. Wash. 2009) nor *In re I.D. Craig Serv. Corp.*, 138 B.R. 490 (Bankr. W.D. Pa. 1992) address the situation in this case – where one- or two-year season ticket holders claim to have a renewal right in the absence a writing establishing that right.

Plaintiffs first try to equate the "Emerald Club Brochure" in *Brotherson* with the 2013-14 Renewal Guide (A.C. Ex. B). (Opp. Br. at 11, 13, 15). While both documents were sent to season ticket holders, the Emerald Club Brochure was (in its own words) an "unprecedented offer" with an "unprecedented commitment" to provide "three year cost certainty through the 2009-2010 season." 604 F.Supp.2d at 1280. The *Brotherson* court ruled that the Brochure was a contractual offer containing "all essential terms" of the contract, including "several material terms [that] promis[ed] not only 2008 season tickets, but the option to renew those tickets at the same price in the 2009 and 2010 seasons." *Id.* at 1284. The 2013-14 Renewal Guide, on the other hand, made no references to seasons beyond the 2013-14 season. (A.C. Ex. B). This is a "dispositive" (Opp. Br. at 13) difference between the two cases. The 2013-14 Renewal Guide is a contractual offer to purchase tickets for the 2013-14 season only. (Moving Br. at 10).

In *I.D. Craig*, the parties, including the operator of the Pittsburgh Steelers, stipulated that there was a writing that promised a renewal right and right to transfer a season ticket account: "The Steelers Season Ticket Holder Handbook expressly provides for the renewal or assignment of season tickets." (Mordkoff Decl., Ex. 3 at 2 (¶1(e)). There is no document from the Devils

4

that provides for renewal. Further, while season ticket accounts were transferrable in *I.D. Craig*, the Devils invoices expressly stated that each account was "non-transferrable." (Weber Decl. Ex. 1-3). While there was a long history of the Steelers offering renewal, one cannot separate the existence of an express writing promising renewal from the decision in that case.

In *Oshinsky v. N.Y. Football Giants, Inc.*, No. 09-1186, 2009 WL 4120237 (D.N.J. Nov. 17, 2009), the court relied on two cases with express writings promising renewal to deny a motion to dismiss an implied contract claim asserting the existence of a renewal right without such an express writing. In *Oshinsky*, the Court determined that limited discovery was necessary to determine the existence (and possible content) of writings or commitments made over a 24-year relationship. Here, Plaintiffs bought tickets for, at most, two seasons, and every document concerning season tickets cited in the Amended Complaint is in the record. None creates an express or implied renewal right. These differences are sufficient to distinguish *Oshinsky*.

Plaintiffs make much of the lack of a disclaimer in Devils ticketing materials, claiming, in a non-sequitur (Opp. Br. at 15), that there was no disclaimer because there was an implied renewal agreement between the parties. This is false. There is no disclaimer because there was no need to disclaim a right that had not been conveyed in any express writing or could be implied from conduct. In *Kully v. Goldman*, even without a disclaimer, the court ruled that despite a 17-year practice of offering a season ticket holder (Goldman) the opportunity to purchase season tickets to University of Nebraska football games, Goldman had no renewal right, even though season ticket holder status did carry some benefits. 305 N.W.2d 800, 802 (Neb. 1981).

> Goldman had no contractual right with the university which bound it to annually, for any period of time, sell him tickets upon tender by him of the purchase price. Because Goldman was on the list of annual purchasers, his prospect of obtaining the same seats and the same number of seats each year was good. It was not, however, a property right which he could enforce. The university could, at any time if it chose, refuse to sell tickets to Goldman. Although it is undoubtedly true that the university, barring some change in circumstances, was most likely to continue to sell Goldman tickets, it was not required to do so.

*Id.* The lack of a disclaimer has no bearing on whether a single renewal creates a renewal right. Nebraska had no disclaimer, and Goldman had a 17-year course of dealing with the university, but that was not enough to give him a contractual renewal right.

Other cases cited by Plaintiffs do not support their claims. In *Beder v. Cleveland Browns, Inc.*, the court did not address issues of implied contract after it found that "an *express contract* exists between the Browns and appellants," which precluded them "from seeking alternative relief on the theory of implied contract[.]" 717 N.E.2d 716, 720 (Ohio Ct. App. 1998) (emphasis added). Here, Plaintiffs' only possible claim is for an implied contract – and thus *Beder* is inapplicable. The discussion of whether the debtor's estate possessed renewal rights for Boston Red Sox tickets in *In re Platt* was entirely dicta, because the estate failed to establish ownership of the account in question. 292 B.R. 12, 16-17 (Bankr. D. Mass. 2003). And, that dicta runs counter to the litany of cases (Moving Br. at 13-14) finding no contractual right to renew.

Where all pertinent writings between the parties are in the record, and none express a renewal right (unlike in *Brotherson, I.D. Craig, Beder*) and there is no lengthy history of season ticket purchases where the content of the parties' communications is in question (*Oshinsky*), then a single renewal is insufficient to create a renewal right, and the breach of contract claim fails.

### D. Plaintiffs Have Not Sufficiently Pled Damages For A Breach Of Contract

Damages are a required element of a breach of contract claim. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). The Amended Complaint contains no allegations as to any damages suffered by Plaintiffs as a result of the purported breach of contract. In opposition, Plaintiffs try to salvage Count I by – for the first time – asserting that their damages from the alleged breach are the loss of "savings" they would have received as 2014-15 season ticket holders over the individual-game price and the inability to resell tickets. (Opp. Br. at 18-19). But "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *PepsiCo*, 836 F.2d at 181. Failing to find anything in their pleading on contract damages, Plaintiffs refer to ¶ 76 of the Amended Complaint (Opp. Br. at 19), which is part of Count III and

only applies to their NJCFA claim. Count I, the claim for breach of contract, runs from ¶ 45 through ¶ 53, and incorporates *prior* (not subsequent) paragraphs that "relate to this count". (A.C. ¶ 45). Thus, ¶ 76 is not part of Count I and does not plead damages for the contract claim.

While Plaintiffs claim to seek damages under the theory espoused by the *Brotherson* plaintiffs, there the team made an express "unprecedented commitment" to offer the right renew for multiple years at the same price. Here the Devils made no commitment to the Olsens to offer them the opportunity to renew. The damages sought in *Brotherson* are not appropriate here.

## II.  THE IMPLIED COVENANT CLAIM IS DUPLICATIVE OF COUNT I AND SHOULD BE DISMISSED

In Count II, Plaintiffs assert that the "implied covenant of good faith and fair dealing required Defendant to grant Plaintiffs the opportunity to renew for the 2014-15 season" (Opp. Br. at 20), and that Defendant denied renewal in bad faith. (Opp. Br. at 24). This is duplicative of Count I, where Plaintiffs claim Defendant breached an implied contract by not offering them a renewal opportunity. (A.C. ¶53, Opp. Br. at 20). Plaintiffs "cannot maintain a claim for breach of the implied covenant [when] the cause of action arises out of the same conduct underlying [an] alleged breach of contract." *Hahn v. OnBoard LLC*, No. 09-3639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009) (dismissing implied covenant claim). Of course, if there is no contract (express or implied), there cannot be an implied covenant claim. (Moving Br. at 18).

Count II also fails to the extent it is based on the imposition of printing fees and time restrictions. Plaintiffs did not respond to Defendant's arguments that: (a) Plaintiffs did not plead facts showing they were prevented from selling their tickets, and thus were not denied any benefits of the contract, or (b) Plaintiffs were charged printing fees during the 2012-13 season and renewed their tickets for 2013-14, so the fees and time restriction could not have violated their reasonable expectations. (Moving Br. at 18-20). Count II is thus waived to the extent based on the printing fees or time restriction. *Griglak v. CTX Mortg. Co., LLC*, No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010) ("failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count").

7

Plaintiffs' implied covenant claim also fails because they fail to plead bad faith or ill motive. Plaintiffs disingenuously argue that their allegations track the facts of *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Associates*, 182 N.J. 210 (2005) (Opp. Br. at 23). The facts are entirely dissimilar. In *Brunswick Hills*, plaintiff expressed in writing its intent to exercise an option in a written contract, and defendants evaded and ignored plaintiffs for nineteen months. *Id.* at 229. Here, there is no written agreement and no implied renewal right. To the extent Plaintiffs allege that the ability to resell tickets was part of a contract, under the facts alleged they could resell their tickets in either hard copy or electronic form. (Moving Br. at 20). The facts showing the defendant's bad faith in *Brunswick Hills* are absent here.

### III. THE NEW JERSEY CONSUMER FRAUD ACT CLAIM FAILS

#### A. Any NJCFA Claim Based On N.J.S.A. § 56:8-33 Fails

Plaintiffs did not respond to Defendant's argument that Count III fails to the extent it is based on N.J.S.A. § 56:8-33. (Moving Br. at 22-24). After multiple references in the Amended Complaint, Plaintiffs fail to cite the statute once in their opposition brief. Any claim based on the statute must be dismissed for reasons set forth previously, and because failure to respond to an argument constitutes waiver. *Griglak,* 2010 WL 1424023, at *3; *Diaz v. Bullock*, No. 13-5192, 2014 WL 5100560, at *3 (D.N.J. Oct. 10, 2014).

#### B. Rule 9(b) Applies To Plaintiffs' Unconscionable Commercial Practice Claim

Plaintiffs argue that because their NJCFA claim is based on purported "unconscionable commercial practices" and does "not accuse Defendant of deceit or misrepresentations" that Count III need not meet the heightened pleading requirements of Rule 9(b). (Opp. Br. at 25-26 (citing *Katz v. Live Nation, Inc.*, No. 09-3740, 2010 WL 2539686 (D.N.J. June 17, 2010))). Plaintiffs misconstrue their own Amended Complaint and the law.

In *Katz*, plaintiffs argued that their NJCFA claim could survive without misleading or deceptive conduct. *See id.* at * 5 and 2010 WL 3522792 at *4 (denying motion to certify appeal). But here, the Olsens expressly alleged that they were misled. "Plaintiffs . . . *were*

8

*misled* and suffered ascertainable loss as a result of Defendant's actions in violation of the [NJCFA]." (A.C. ¶ 72 (emphasis added)). By asserting that they were misled, Plaintiffs have pled a claim sounding in fraud. Plaintiffs cannot amend their complaint by asserting in their brief that they do "not allege that Defendant deceived them[.]". (Opp. Br. at 25).

"The capacity to mislead is the prime ingredient of all types of consumer fraud." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). As such, most decisions hold that NJCFA claims based on "unconscionable commercial practices" similar to the Olsens' must satisfy Rule 9(b). In *Morris Cnty. Cardiology Consultants, PA v. Nw. Mut. Life Ins. Co.*, plaintiff said its insurer violated the NJCFA when it denied its claim. No. 08-0030, 2009 WL 3068260, *1 (D.N.J. Sept. 21, 2009). Judge Chesler dismissed the claim, holding that an "unconscionable commercial practice involves a lack of good faith, fair dealing, or honesty" and that the claim, which was "predominantly a breach of contract claim" was required to "meet the particularity requirements of Rule 9(b)" and did not. *Id*. at *2. In *Pacholec v. Home Depot USA, Inc.*, plaintiff claimed a rental contract with a "negative option" charging an insurance fee that was removable only at the request of the customer was an "unconscionable commercial practice[.]" No. 06-0827, 2006 WL 2792788, *1 (D.N.J. Sept. 26, 2006). Judge Sheridan dismissed because the NJCFA claim failed to satisfy Rule 9(b). *Id*. at *2. *Katz* is the outlier decision, holding that Rule 9(b) did not apply to an "unconscionable commercial practice" NJCFA claim, while still recognizing that the "capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice." *Id.* at *5 (quoting *Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 378 (1977)). The *Katz* court still found that the alleged conduct did "indicate a capacity to mislead." *Id*.

Rule 9(b) governs Count III and Plaintiffs have failed to meet its standards (Moving Br. at 25). But the Court need not address the Rule 9(b) issue – Count III fails for other reasons, too.

### C. "Savings" For An Unpurchased Product Are Not An "Ascertainable Loss"

An NJCFA claim requires: (1) unlawful conduct, (2) ascertainable loss, and (3) causation between the unlawful conduct and ascertainable loss. (Moving Br. at 21-22). Plaintiffs must

9

plead that they "suffered an actual loss." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005). "An actionable loss is not 'hypothetical or illusory.'" *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 281 (D.N.J. 2011) (quoting *Thiedemann* at 248). Plaintiffs must "plead specific facts setting forth and defining the ascertainable loss suffered." *Green* at 282. They have not done so.

In their opposition brief, Plaintiffs, state for the first time that they were deprived of "significant savings" – the difference between the price they would pay as season ticket holders, and the cost of comparable tickets purchased for each individual game. But nowhere do the Olsens allege in the Amended Complaint that they actually purchased tickets at the higher individual-game price after they were denied renewal. They seek to recover this difference in price without purchasing new tickets and suffering the loss. That is insufficient to show the "actual loss" required for an NJCFA claim. *Thiedemann*, 183 N.J. at 248.

In *Disanto v. Best Buy Stores, L.P.*, plaintiff sued a retailer ("Best Buy") under the NJCFA for failing to honor its "price match guarantee" policy, in which it promised to "match any local competitor's lower price" or, if a customer had already purchased the product at Best Buy and then found a lower price elsewhere, refund the entire difference in price plus 10% of the difference. No. 09-4727, 2010 WL 3522790, *1-*2 (D.N.J. Aug. 31, 2010). Plaintiff alleged that twice he came into Best Buy with proof of a lower price offered at a rival local store, but Best Buy refused to match the price. In neither instance, did plaintiff allege that he actually purchased the item in question. *Id.* at *3. On a third visit, plaintiff again sought a price match, which Best Buy allegedly refused, but plaintiff purchased the item at the higher price from Best Buy anyway. *Id.* at *4. Judge Sheridan dismissed the NJCFA claim to the extent based on the first two attempted price matches, because "he never made any purchases" on those visits and was "unable to demonstrate any actual loss with his first two price match requests." *Id.* at *6.

The same holds true here. Plaintiffs do not allege that they purchased tickets at higher prices after the denial of renewal. Without a purchase, Plaintiffs cannot show that they suffered an "ascertainable loss" based on purported "savings." This is fatal to their NJCFA claim.

10

### D. No Causation Between Alleged NJCFA Violations and Ascertainable Loss – The Alleged Loss Was Caused By The Denial Of Renewal, Which Is Insufficient For An NJCFA Claim

Plaintiffs do not refute Defendant's argument (Moving Br. at 26) that denial of renewal, without more, is only a breach of (an alleged) contract and therefore insufficient to constitute an "unconscionable commercial practice" under the NJCFA. *See*, *e.g.*, *Slinko-Shevchuk v. Ocwen Fin. Corp.*, No. 13-5633, 2015 WL 1271963, at *6 (D.N.J. Mar. 18, 2015) (Cecchi, J.). Instead, Plaintiffs argue that the denial of renewal was part of a "process to assert total control over the ticket resale market" and that this preserves their claim. (Opp. Br. at 27-28). However, as noted above, the only "ascertainable loss" that Plaintiffs allege for Count III is the lost "savings" between the cost of season tickets and the cost of buying individual game tickets. (Opp. Br. at 28-29). The only alleged act by Defendant that could cause that loss of savings (and the loss of any other benefits that season ticket holders received) is the denial of renewal. None of the other purported acts that Plaintiffs try to lump together for their NJCFA claim[4] could cause the only ascertainable loss asserted by Plaintiffs. As a result, Plaintiffs have failed to allege facts sufficient to show that acts other than denial of renewal caused their alleged ascertainable loss, and any NJCFA claim based on these other acts fails. *Cox*, 138 N.J. at 23. (Moving Br. at 29).

That leaves the denial of renewal as the sole cause of the purported ascertainable loss of the denial of "savings." As Plaintiffs assert in Count I, the denial of renewal is a breach of contract, which, without more, is insufficient for an NJCFA claim. As a result, the NJCFA claim must be dismissed. *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998).

## IV. DECLARATORY JUDGMENT CLAIM MUST BE DISMISSED

Plaintiffs fail to rebut Defendant's arguments (Moving Br. at 29-30) calling for dismissal of the declaratory judgment claim in Count IV. In response, Plaintiffs argue only that "there is an actual controversy," and that a declaratory judgment would help determine whether there is a

---

[4] These include: inflating the price of tickets, implementing printing fees and timing restrictions, charging a commission for resale on NHL Ticket Exchange, and hindering the ability to resell. (Opp. Br. at 27-28).

"right to resell tickets under New Jersey law[.]" (Opp. Br. at 30). Plaintiffs merely repeat the same insufficient allegations from their complaint and have not identified which "New Jersey law" provides them with a right to resell single-game tickets. For the reasons set forth previously, the declaratory relief claim fails.

## CONCLUSION

The Amended Complaint should be dismissed in its entirety.

Dated: October 16, 2015

                        Respectfully submitted,

                        **PROSKAUER ROSE LLP**

By:    /s/ Michelle A. Annese
        Michelle A. Annese
        One Newark Center
        Newark, NJ 07102
        Ph.: (973) 274-3200
        Fax: (973) 274-3299
        mannese@proskauer.com

        Kevin J. Perra*
        David S. Mordkoff*
        Eleven Times Square
        New York, NY 10036
        Ph.: (212) 969-3000
        Fax: (212) 969-2900
        kperra@proskauer.com
        dmordkoff@proskauer.com
        *Admitted *pro hac vice*

        *Attorneys for Defendant*